IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DAVIS-LYNCH, INC. | § § | |
| *Plaintiff,* | § § | CIVIL CASE NO. 6:07-CV-559-JDL |
| vs. | § § | |
| WEATHERFORD INT'L, INC. | § § | |
| *Defendant.* | § | |

PLAINTIFF DAVIS-LYNCH, INC.'S OPPOSITION TO
DEFENDANT'S MOTION FOR LEAVE TO SUPPLEMENT
DEFENDANT'S INVALIDITY CONTENTIONS

HOULITIGATION:946149.1

Plaintiff Davis-Lynch, Inc. ("Davis-Lynch") files this opposition to Defendant Weatherford Int'l, Inc.'s ("Weatherford") motion for leave to supplement its patent invalidity contentions [Doc.123] and would respectfully show this Court as follows:

I. **SUMMARY OF ARGUMENT**

For over four years, Weatherford has known that liner hangers and springs were specifically disclosed in U.S. Patent No.6,679,336 ("the '336 patent"). Weatherford has no excuse for its lack of diligence in asserting the alleged prior art related to liner hangers and springs that it wishes to add to its invalidity contentions. Davis-Lynch would be extremely prejudiced if Weatherford were permitted to supplement its invalidity contentions with this material at such a late date. No continuance is available, and the materials are not even important. Therefore, Weatherford's motion for leave should be denied.

II. **ARGUMENT & AUTHORITIES**

A. **Weatherford's Lack of Diligence**

Weatherford has known that the '336 patent includes discussions of springs and liner hangers for at least five years. There is no excuse for Weatherford's lack of diligence in now trying to supplement its invalidity contentions to add alleged prior art related to springs and liner hangers. The following evidence proves that Weatherford's arguments are disingenuous.

1. **Weatherford has Known about Liner Hangers**

According to Weatherford, it knew about the potential for this lawsuit as early as April 2003.[1] The '336 patent issued on January 20, 2004.[2] Thus, Weatherford has had unlimited access to the '336 patent for over five years. It is disingenuous for Weatherford to claim that it

---

[1] See Weatherford's Counterclaims at ¶ 20 [Doc.43].
[2] See **Ex.1** [U.S. Patent No.6,679,336].

did not know that liner hangers was an example of the fluid pressure-operated tool of claim 37 until Davis-Lynch supplemented its PIC's in February 2009.

> The '336 patent makes the following disclosures:
>
> The pressure responsive equipment could be any hydraulically operated equipment such as, for instance, *hydraulically operated liner hanging equipment*.[3]
>
> Thus, the present invention may permit setting *hydraulically activated liner hanger equipment* without the need for additional landing collars or setting balls. Once ball 23 is dropped, then the *hydraulically activated liner equipment* can be operated at a pressure lower than the conversion pressure. After the *liner equipment* is operated, then conversion of conversion tool 14 can be effected…[4]
>
> Conversion pressure can be adjusted to allow for setting *hydraulic type liner hangers*, prior to converting the shoe/collar at higher pressures.[5]

Weatherford has had unlimited access to the '336 patent since it issued in January 2004. The parties spent a year in litigation over the '336 patent between February 2004 and February 2005 including complete *Markman* briefing.[6] Weatherford participated in the reexamination of the '336 patent.[7] Further, the parties have gone through over another year of litigation in this case and actually had a *Markman* hearing. Yet, despite the clear disclosures above in a document with only 18 columns, Weatherford claims that it had no idea that liner hangers may be an example of the fluid pressure-operated tool in claim 37.[8]

---

[3] **Ex.1** at 4:49-52 (emphasis added).
[4] **Ex.1** at 9:46-52 (emphasis added).
[5] **Ex.1** at 6:22-24 (emphasis added).
[6] See *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No.6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas.
[7] See **Ex.2** [Weatherford's Third-Party Request for Reexamination of the '336 Patent].
[8] Davis-Lynch did not include "wiper plugs" in its infringement contentions related to claim 37. This is clear. Davis-Lynch has reiterated this to Weatherford in correspondence. Weatherford also had an opportunity to discuss this with one of the inventors, Jeffry Ehlinger, at his deposition recently, but did not ask any questions about it. Davis-Lynch is not asserting that "wiper plugs" are fluid pressure-operated tools as claimed in claim 37.

Weatherford's own actions reveal that it knew that liner hangers may be an example of the fluid pressure-operated tool in claim 37. Weatherford cited to the excerpts regarding liner hangers above in Weatherford's Intrinsic and Extrinsic Evidence on Which It Intends to Rely in Support of Its Proposed Claim Constructions [Doc.80] filed on December 29, 2008.[9] In fact, Weatherford cited to these same excerpts back on ***December 21, 2004***, when it filed the same document in the previous case.[10]

Weatherford questioned Jerry Allamon, one of the inventors, about liner hangers at his deposition on October 22, 2008:

> **Q: (Mr. Lechtenberger):** Does multi-purpose have meaning in this particular schematic?
> A: Yes, it does.
> Q: And what's that?
> A: One, it's an auto-fill float collar.
> Q: Anything else?
> A: And it's a ball seat to *set the hanger*.
> Q: And is the same drop ball used for both purposes?
> A: What do you mean, "the same"?
> Q: Do you use the same drop ball to *set the hanger* that you also use to activate the float collar?
> A: Yes.[11]

The questioning by Mr. Lechtenberger regarding liner hangers continued for several more pages as shown in **Exhibit 3**. LoGuidice also provided testimony on liner hangers.[12] Further, Weatherford asked another inventor, Jeff Ehlinger about liner hangers during his deposition:

> Q: Okay. Can you give me examples of the other type of *hydraulically operated equipment* that might be in the tubular string?
> A: *Liner hangers*. Liner packers...[13]

---

[9]  As part of its P.R. 4-3(b) disclosures, Weatherford cited to the '336 patent excerpt from 6:22-24 on the following pages: 20 & 23; it cited to the '336 patent excerpt from 9:46-48 on the following pages: 20 & 23; and it cited to the '336 patent excerpt from 4:49-52 on the following page: 22. See Doc.80.

[10] See *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No.6:04-cv-00054-MHS at Doc.100. Weatherford cited to the excerpts from 4:49-52 on the following pages: 24, 25-26 & 27; to the excerpts from 9:46-48 on the following pages: 24-25, 26, & 27-28; and to the excerpts from 6:22-24 on the following pages: 24, 26 & 27. See id.

[11] Ex.3 at 84:18-85:4 [Deposition of Jerry Allamon taken on October 22, 2008] (emphasis added).

[12] See **Ex.4** at 194-195 [Deposition of Michael LoGiudice taken on November 13, 2008].

In fact, Mr. Ehlinger was asked about liner hangers on several occasions.[14] In fact, Weatherford even referred to liner hangers at the hearing before this Court on January 7, 2009:

> With respect to the claim chart that they have attached, just for the sake of being complete, I've mentioned claim 37 previously, they've now identified two different tools, a wiper plug based on the document produced in the original lawsuit and also a – apparently a liner, use of the *liner hanger as the second tool for claim 37*.[15]

Here is a section from discussion with Court:

> **The Court**: Okay. Is the *liner hanger* kind of the same thing, that this is a second tool they're identifying?
> **Mr. Lechtenberger**: This is the first time they've identified it finally, yes.[16]

The '336 patent clearly discloses that liner hangers may be an example of the fluid pressure-operated tool in claim 37. Weatherford has had unlimited access to the '336 patent since at least January 2004. Weatherford cited to the portions of the '336 patent disclosing liner hangers in December 2004 and again in December 2008. The depositions in this case have included specific questions about liner hangers, and Weatherford even discussed it at the hearing before this Court back on January 7, 2009. Despite all of this evidence, Weatherford claims that it had no idea that liner hangers may be an example of the fluid pressure-operated tool until Davis-Lynch supplemented its PIC's on February 9, 2009.

### 2.   Weatherford has Known about Springs

As shown above, Weatherford has had unlimited access to the '336 patent for over five years. It is disingenuous for Weatherford to claim that the '336 patent disclosed that springs could be used with the flappers until Davis-Lynch supplemented its PIC's in February 2009.

The '336 patent makes the following disclosures:

---

[13] **Ex.5** at 35:8-11 [Deposition of Jeffry Ehlinger taken on March 5, 2009] (emphasis added).
[14] *See* **Ex.5** at 42, 49, 50, 51, 52, 53, 93-94 and 144.
[15] **Ex.6** at 16:23-17:4 [Transcript of January 7, 2009, Hearing] (emphasis added).
[16] **Ex.6** at 49:6-10 (emphasis added).

> Preferably, valves 31 are biased to the closing position with biasing elements such as with *springs*, elastomerics, and the like.[17]
>
> Preferably, check valves 31 are ***spring loaded or biased*** to the closed position.[18]

As mentioned above, Weatherford has had unlimited access to the '336 patent since it issued in January 2004. The parties spent a year in litigation over the '336 patent between February 2004 and February 2005 including complete *Markman* briefing.[19] Weatherford participated in the reexamination of the '336 patent.[20] Further, the parties have gone through over another year of litigation in this case and actually had a *Markman* hearing. Yet, despite the clear disclosures above in a document with only 18 columns, Weatherford claims that it had no idea that springs could be used with the flappers until Davis-Lynch supplemented its PIC's in February 2009.

Weatherford questioned Jerry Allamon, one of the inventors, about springs at his deposition on October 22, 2008.[21] LoGuidice provided testimony on springs.[22] Weatherford also extensively asked Ehlinger about springs:

> **Q**: Does Davis-Lynch have ***springs*** on its flappers?
>
> **A**: Yes.[23]

Springs were also raised with this Court.[24]

The '336 patent clearly discloses that that springs could be used with the flappers. Weatherford has had unlimited access to the '336 patent since at least January 2004. The depositions in this case have included specific questions about springs, and Weatherford even

---

[17] **Ex.1** at 9:15-17 (emphasis added).
[18] **Ex.1** at 9:26-27 (emphasis added).
[19] *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No.6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas.
[20] *See* **Ex.2**.
[21] *See* **Ex.3** at 39-40 and 78.
[22] *See* **Ex.4** at 193 and 196-97.
[23] *See* **Ex.5** at 174:2-3; *see also* **Ex.5** at 83, 162-63, 168-70 and 174-75.
[24] *See* **Ex.6** at 19:18-19 and 41:13-42:3.

discussed springs at the hearing before this Court back on January 7, 2009. Despite all of this evidence, Weatherford is telling the Court that it did not know that springs may be used with the flappers until Davis-Lynch supplemented its PIC's on February 9, 2009.

There is no excuse for Weatherford's lack of diligence in seeking to supplement its invalidity contentions. Weatherford knew that liner hangers may be an example of the fluid pressure-operated tool and that springs may be used with the flappers well before Davis-Lynch supplemented its PIC's. This Court previously held that Davis-Lynch could not have leave to supplement its PIC's based, in part, on this Court's finding that Davis-Lynch had been given relevant information six months earlier.[25] Here, Weatherford has known about liner hangers and springs for four to five years. This factor weighs in favor of denying Weatherford's motion for leave.

### B.   Davis-Lynch would be extremely prejudiced if WFD can supplement

On February 2, 2004, Davis-Lynch first brought suit against Weatherford for infringing the '336 patent. The parties agreed to dismiss that case so that certain alleged prior art raised by Weatherford could be put before the U.S. Patent Office for a determination as to whether the '336 patent claims were still valid.[26] This was after a year of litigation.

The reexamination took two years, and afterwards, Davis-Lynch re-filed its case. In this case, almost a year and a half of litigation has passed. Two inventors, Allamon and Ehlinger, have been deposed. Two Weatherford employees have been deposed, Smith and LoGiudice. A *Markman* hearing has already occurred. After everything that has transpired over the last five years, allowing Weatherford to now add new alleged prior art, especially when there is no excuse for the delay, would extremely prejudice Davis-Lynch. This is especially true when this Court

---

[25]   *See* Memorandum Opinion and Order [Doc.83] at 6.
[26]   *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No.6:04-cv-00054-MHS, at Doc.127.

has already held that the Court's docket does not permit a continuance of the remaining deadlines.[27]

Davis-Lynch would be subjected to extreme prejudice if Weatherford were given leave to supplement its invalidity contentions at this late date after over five years of litigation. This weighs in favor of denying Weatherford's motion for leave.

### C. **Importance**

Previously, in its order regarding Davis-Lynch's motion for leave to supplement its PIC's, this Court held that "the relative importance of including these products in its PICs should have generated a commensurate amount of diligence."[28] Here, if Weatherford's alleged prior art was important, then it would not have waited over four years to raise it. Further, these are not the only pieces of alleged prior art that Weatherford has asserted. Additionally, the lack of diligence by Weatherford outweighs any prejudice that may result if Weatherford cannot add the additional alleged prior art.

Consistent with this Court's earlier ruling on similar issues, this factor weighs in favor of denying Weatherford's motion for leave.

### D. **Availability of a Continuance**

As mentioned above, this Court has already held that the Court's docket does not permit a continuance of the remaining deadlines.[29] That statement by this Court was made back in January 2009. Thus, according to this Court, a continuance is not available. This factor also weighs in favor of denying Weatherford's motion for leave.

Weatherford was not diligent is seeking to supplement its invalidity contentions. Extreme prejudice would inure to Davis-Lynch if leave were granted. The supplementation has

---

[27] *See* Memorandum Opinion and Order [Doc.83] at 8.
[28] Memorandum Opinion and Order [Doc.83] at 7.
[29] *See* Memorandum Opinion and Order [Doc.83] at 8.

been shown to be not importance, and there is no continuance available. All of the factors required to be considered for leave weigh against Weatherford. Leave should not be granted.

### III.   CONCLUSION

The evidence shows that Weatherford has known that liner hangers and springs were specifically disclosed in the '336 patent for over four years. Weatherford has no excuse for its lack of diligence in asserting the alleged prior art related to liner hangers and springs that it wishes to add to its invalidity contentions. Davis-Lynch would be extremely prejudiced if Weatherford were permitted to supplement its invalidity contentions with this material at such a late date. No continuance is available, and the materials are not even important. Therefore, Weatherford's motion for leave should be denied.

Respectfully submitted,

/s/ Ernest W. Boyd
Ernest W. Boyd
State Bar No. 00783694
Attorney-in-Charge
MehaffyWeber, P.C.
One Allen Center
500 Dallas Street, Suite 1200
Houston, Texas 77002
Telephone: (713) 655-1200
Facsimile: (713) 655-0222
butchboyd@mehaffyweber.com

Of Counsel:
Eric M. Adams
State Bar No. 24031686
ericadams@mehaffyweber.com
Corey J. Seel
State Bar No. 24037465
coreyseel@mehaffyweber.com
MehaffyWeber, P.C.
One Allen Center
500 Dallas Street, Suite 1200
Houston, Texas 77002
Telephone: (713) 655-1200
Facsimile: (713) 655-0222

Local Counsel:
Andy Tindel
State Bar No. 20054500
atindel@andytindel.com
Provost Umphrey Law Firm, LLP
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

**ATTORNEYS FOR PLAINTIFF DAVIS-LYNCH, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that on March 25, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Stephen H. Cagle
J. Dean Lechtenberger
Joan E. Beckner
Eric Schlichter
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002-5242

S. Calvin Capshaw
Elizabeth L. DeRieux
Capshaw DeRieux, LLP
P.O. Box 3999
Longview, Texas 75606-3999

**ATTONEYS FOR DEFENDANT
WEATHERFORD INT'L, INC.**

                                            /s/ Eric Adams
                                            Eric Adams

## CERTIFICATE OF AUTHORIZATION TO FILE SEALED DOCUMENTS

Pursuant to E.D. Tex. Loc. Ct. R. CV-5(a)(7(A), I hereby certify that Exhibits 3, 4, and 5 are authorized to be filed under seal because the Court has granted authorization to file sealed documents in this action by virtue of the Protective Order previously entered herein.

/s/ Eric Adams
Eric Adams