IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **DAVIS-LYNCH, INC.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL CASE NO. 6:07-CV-559** |
| **vs.** | § | |
| | § | **JURY TRIAL REQUESTED** |
| **WEATHERFORD INT'L, INC.** | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF DAVIS-LYNCH, INC.'S MOTION TO SHOW CAUSE WHY
DEFENDANT WEATHERFORD INT'L, INC. AND HOWREY LLP
<u>SHOULD NOT BE HELD IN CIVIL CONTEMPT</u>**

Plaintiff Davis-Lynch, Inc. ("Davis-Lynch") files this Motion to Show Cause why

Defendant Weatherford Int'l, Inc. ("Weatherford") and its counsel Howrey LLP ("Howrey")

should not be Held in Civil Contempt and would respectfully show this Court as follows:[1]

## I.   STATEMENT OF THE ISSUES

As required by Local Rule CV-7(a)(1), the following is a statement of the issues to be

decided by this Court:

- Weatherford and Howrey are in civil contempt by violating a protective order in this case.

- Weatherford and Howrey should be sanctioned for their violation of a protective order.

- Weatherford's counterclaims and affirmative defenses should be dismissed as a sanction for its violation of a protective order.

- Howrey should be required to immediately return all protected materials produced by Davis-Lynch as well as forbid Howrey future access to these materials.

---

[1] As this Court is aware, Davis-Lynch has another pending patent infringement case with Weatherford: *Davis-Lynch, Inc. v. Hilcorp Energy Company, et al.*, Case No. 6:09-cv-00168-LED, in the United States District Court for the Eastern District of Texas, Tyler Division.  Given that the issues addressed in this Motion must also be addressed in the other pending case, a similar motion has been filed in the other pending matter which is attached here as **Exhibit 16**.

- The entire Howrey firm should be ordered not to participate in the consultation of, preparation or prosecution of any patent application, including requests for reexaminations and reexaminations, relating to methods and apparatus used in running and/or cementing casing and/or liners, including but not limited to valving systems, float equipment, guide shoes, cement retainers, running tools, and liner hangers during any time prior to the expiration of eighteen (18) months following the final resolution of this case (including any appeals).

## II.   SUMMARY OF ARGUMENT

This is a patent infringement case between competitors involving extremely sensitive information.  Because of these circumstances, adherence to the protective orders issued in this case is of paramount concern.  Davis-Lynch has recently discovered that Weatherford and Howrey blatantly violated a protective order related to this case in order to gain an unfair advantage.  Unfortunately, this violation is merely one example of a pattern of behavior in this case as will be discussed below.

## III.   ARGUMENT & AUTHORITIES

### A.   Factual Background

On July 10, 2009, Davis-Lynch took the deposition of Janelle Waack.  Ms. Waack is an attorney with the Howrey law firm, and requests for reexamination related to this case were filed with the U.S. Patent and Trademark Office ("PTO") under her name.  Ms. Waack was presumably requested to file these materials with the PTO since she had not previously acted as litigation counsel for Weatherford and should not have had access to sensitive materials protected from disclosure by the Court's protective order.

During this deposition, Davis-Lynch learned for the very first time that Ms. Waack had not actually prepared the requests for reexamination filed with the PTO.  Rather, the requests were prepared by other Howrey attorneys who were litigation counsel for Weatherford and barred from participating in the preparation of such requests for reexamination.  Ms. Waack was merely brought in to review the requests and file them under her name.  As the evidence below

shows, this violation of the Court's protective order was blatant and done to gain unfair advantage.  Further, it is clear that Weatherford and Howrey attempted to conceal their violations of the protective order by having Ms. Waack sign the requests for reexamination.

On February 2, 2004, Davis-Lynch sued Weatherford for patent infringement of U.S. Patent Nos. 6,401,824 ("the '824 patent") and 6,679,336 ("the '336 patent").[2]  After a little more than a year of litigation, the parties agreed to dismiss this First Case, without prejudice, while reexaminations were sought on the '824 and '336 patents.[3]  Once the reexamination certificates were issued a few years later, Davis-Lynch re-filed its lawsuit against Weatherford which is the present lawsuit.

On May 20, 2004, the Court in the First Case issued a Protective Order which included the following provision: "Protected Documents and any information contained therein shall be used *solely for the prosecution of this litigation*."[4]  A few months later, *Weatherford moved* to modify the Protective Order so that anyone with access to "Confidential" or "Attorney's Eyes Only" material could not participate in patent prosecutions as well.[5]  On August 31, 2004, after briefing, the Court in the First Case issued an Agreed Protective Order which included the following provisions:

> Restricted Persons. Notwithstanding the provisions of paragraph 5 and paragraph 6, information designated "Confidential" or "Attorney's Eyes Only" may not be disclosed to any attorney, agent, or employee whose duties include participating in the preparation or prosecution of any patent application relating to the subject matter of this litigation on behalf of either of the parties during any time prior to the expiration of eighteen months following final

---

[2] *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division (referred to in this Motion as the "First Case").

[3] *See* Stipulation of Dismissal Agreed [Doc.127] in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division.

[4] **Exhibit 1** which is the Protective Order signed by Judge Leonard Davis on May 20, 2004 [Doc.22] (emphasis added) in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division.

[5] *See* Motion to Modify Protective Order by Weatherford [Doc.34] in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division.

resolution of this case (including any appeals), *and no person who has access to any information designated as "Confidential" or "Attorney's Eyes Only" may thereafter participate in the consultation of, preparation or prosecution of any patent application relating to the subject matter of this litigation on behalf of either of the parties during any time prior to the expiration of eighteen (18) months following the final resolution of this case (including any appeals)*.   The subject matter of this litigation includes methods and apparatus used in running and/or cementing casing and/or liners, including but not limited to valving systems, float equipment, guide shoes, cement retainers, running tools, and liner hangers.[6]

Should a law firm representing any party in this matter employ people who cannot review "Confidential" or "Attorney's Eyes Only" material by reason of paragraph 8 of this Order ("Restricted Persons"), the Attorney-in-Charge for that party shall be responsible to establish a "screen" between the Restricted Persons and the remainder of the firm and the "Confidential" or "Attorney's Eyes Only" material.[7]

Still unsatisfied, **Weatherford moved** for clarification of the Agreed Protective Order on November 4, 2004.[8]   As a result, the Court issued an order clarifying the Agreed Protective Order so that the provisions of paragraph 8 quoted above also applied to reexamination proceedings:

[T]he phrases "preparation or prosecution of any patent application" and "consultation of, preparation or prosecution of any patent application" in paragraph 8 of the Agreed Protective Order in this action include, but are not limited to, *requests for reexamination* and reexaminations relating to the patents in suit in this case.[9]

On December 21, 2004, Davis-Lynch filed its requests for reexamination of the '824 and '336 patents.  On February 11, 2005, the parties agreed to dismiss the case without prejudice

---

[6] **Exhibit 2** at ¶ 8; **Exhibit 2** is the Agreed Protective Order signed by Judge Leonard Davis on August 31, 2004 [Doc.57] (emphasis added) in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division.

[7] *Id.* at ¶ 18.

[8] *See* Motion for Expedited Hearing and Motion to Enforce the Protective Order [Doc.76] in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division.

[9] **Exhibit 3** at 1-2.  **Exhibit 3** is the Order granting Motion for Request for Hearing and Clarification of Protective Order [Doc.83] (emphasis added) in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division.

while the reexaminations were pending.[10]  On June 13, 2005, Howrey separately filed its own requests for reexamination of the '824 and '336 patents with the PTO.[11]  As mentioned above, these requests for reexamination indicated that the person filing Howrey's requests for reexamination was Janelle Waack, an attorney with Howrey.[12]  Ms. Waack was not involved in the First Case according to her testimony.[13]

On August 24, 2005, Mr. Cagle, lead counsel for Weatherford in the First Case and in this pending litigation, sent a letter to Gordon Arnold.[14]  Mr. Arnold had been hired by Davis-Lynch to handle the reexamination proceedings because Davis-Lynch's patent counsel, Guy Matthews, was precluded from handling the reexaminations based upon the Agreed Protective Order.  Mr. Cagle's letter specifically reminded Mr. Arnold of the restrictions contained in the Agreed Protective Order.  Mr. Cagle made the following point:

> Paragraphs 8 and 18 of the Protective Order require establishment of a "screen" between certain Restricted Persons – including those who participate in preparation or prosecution of any patent application relating to U.S. Patent No. 6,401,824 or U.S. Patent No. 6,679,336 during any time prior to the expiration of eighteen (18) months following the final resolution of the case (including any appeals) – and information designated "Confidential" or "Attorney's Eyes Only."[15]

Mr. Cagle went on to state as follows:

> Based on the provisions of the Protective Order *it is imperative that we have an understanding of the individuals who are substantively involved* in the prosecution of Davis-Lynch patent applications, including the subject reexaminations, and who have had access to confidential information under the Protective Order.[16]

---

[10] *See* Stipulation of Dismissal Agreed [Doc.127] in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:04-cv-00054-MHS, in the United States District Court for the Eastern District of Texas, Tyler Division.
[11] *See* **Exhibits 4 & 5** which are Howrey's Requests for Reexamination of the '824 and '336 patents, respectively.
[12] *See id.*
[13] *See* **Exhibit 6** which is the Deposition of Janelle D. Waack taken on July 10, 2009, at 15:16-21.
[14] *See* **Exhibit 7** [ARNOLD_0000192-209].
[15] *Id*. at ARNOLD_0000194.
[16] *Id* (emphasis added).

On August 4, 2006, Mr. Cagle sent another letter to Gordon Arnold.[17]    Mr. Cagle's letter attacked some of Mr. Arnold's arguments in the reexamination proceedings and requested that Mr. Arnold pass along Mr. Cagle's counter-arguments to the PTO.[18]    Mr. Cagle also attached an affidavit which he asked be sent to the PTO as well.[19]

As the above evidence shows, counsel for Weatherford was well aware of the requirements (and clarifications) of the Agreed Protective Order in the First Case, and Mr. Cagle was well aware of his responsibilities as attorney-in-charge for Weatherford to maintain a "screen."   Yet, despite Mr. Cagle's responsibility to maintain a "screen," he failed to advise Ms. Waack that there was a protective order in place.[20]

Weatherford and Howrey violated the Agreed Protective Order by completely failing to create a screen within the Howrey firm and knowingly allowing litigation counsel with access to protected materials in the First Case to prepare the requests for reexamination of the '824 and '336 patents filed by Howrey.   This violation of the Protective Order cannot be disputed.   Ms. Waack testified that, although she signed the requests, she did not actually prepare the requests for reexamination of the '824 and '336 patents:

> **Q:** Do you recall what kind of investigation you did on your own to start preparing these requests for reexamination?
>
> **A:** I just want to clarify.   ***I received a draft of these requests for reexamination.***
>
> **Q:** Okay.
>
> **A:** ***So, my role was as a review attorney, and what I would have received would have been a draft for ex parte reexamination and the documents cited within the request.***

---

[17] *See* **Exhibit 8** [ARNOLD_0000002-11].
[18] *See id.*
[19] *See id.*
[20] *See* **Exhibit 6** at 24:2-7.

> **Q:** *Okay. Do you remember who you received those drafts from?*
>
> **A:** *I believe they were some Howrey associates working on those drafts.*
>
> **Q:** *Do you recall who those individuals were?*
>
> **A:** *Tyler VanHoutan and Joan Beckner.*
>
> **Q:** Do you remember anybody else working on the drafts that were provided to you for these requests for reexamination?
>
> **A:** No.
>
> **Q:** Did you receive a draft of both requests for reexamination?
>
> **A:** Yes.[21]

Ms. Waack also testified that Mr. VanHoutan, litigation counsel who was barred from participating in the reexaminations, continued to assist her:

> **Q:** Did Mr. VanHoutan continue to help you in preparing this reexamination request after you were given the draft?
>
> **A:** Yes.[22]

Thus, it cannot be disputed that the actual requests for reexamination were prepared by litigation counsel Tyler VanHoutan and Joan Beckner. Ms. Waack's participation was merely a concealment tool to hide the fact that litigation counsel was intimately involved in the reexamination requests. As admitted by Ms. Waack, Ms. Waack's participation was merely to review the requests to make sure that they met with PTO requirements and that the statements made were supported by the attachments.[23]

---

[21] **Exhibit 6** at 18:8-19:6 (emphasis added). Further, an *in camera* review of the billing records (in possession of Howrey and those in possession of Weatherford) during this time period for these individuals and other Howrey counsel of record would most likely reflect the drafting of the requests for reexamination by litigation counsel and should reveal whether additional trial counsel were improperly involved.

[22] *Id*. at 24:25-25:3.

[23] *See id*. at 34:22-35:2.

Ms. Beckner and Mr. VanHoutan, both Howrey attorneys, were trial counsel of record for Weatherford in the First Case.  Ms. Beckner and Mr. VanHoutan filed their pro hac vice applications to act as counsel of record for Weatherford on March 3, 2004.[24]  Both individuals were counsel of record during the issuance and briefing related to the protective orders in the First Case.[25]  Both individuals, as counsel of record, had access to protected materials produced by Davis-Lynch in the First Case.  In fact, in a brief with sealed attachments filed by Weatherford in the First Case, both Ms. Beckner and Mr. VanHoutan were listed on Weatherford's signature page.[26]  The sealed attachments were protected materials that had been produced by Davis-Lynch in the First Case.[27]

There is no question that both Mr. VanHoutan and Ms. Beckner had access to "Confidential" and "Attorney's Eyes Only" material in the First Case.  There is also no question that both prepared the requests for reexamination of the '824 and '336 patents filed by Howrey.[28]  It should also be noted that Mr. VanHoutan was a registered patent attorney at the time of these filings.[29]  Yet, Howrey deliberately chose to have Ms. Waack sign the filed requests for reexaminations instead.  Again, Ms. Waack's participation was nothing more than a smoke screen intended to conceal intentional violations of the Agreed Protective Order.

Of course, it should also be noted that statements related to these issues made by Weatherford and Howrey while successfully quashing the depositions of Cagle and Lechtenberger were false.  Weatherford and Howrey stated:

---

[24] *See* **Exhibits 9 & 10**.

[25] Ms. Beckner and Mr. VanHoutan made their first appearances in this case on March 3, 2004, and the briefing related to the protective orders in the First Case all occurred after this date as explained above.

[26] *See* **Exhibit 11** which is the Response in Opposition to Second Motion to Stay and Alternative Motion for Dismissal Without Prejudice filed by Weatherford [Doc.105].  Exhibits 1 and 2 to Weatherford's Response referred to at 14 were protected Davis-Lynch materials filed under seal.

[27] *See id.*

[28] *See* **Exhibit 6** at 18:8-19:6.

[29] *See* **Exhibit 12**.

> Although it submitted responsive third party *ex parte* reexamination requests to address certain prior publications missing from or mischaracterized by Davis-Lynch's requests, **Weatherford had no "role" in the reexamination proceedings themselves**.  The answers to any questions Davis-Lynch may have regarding Weatherford's "role" with regard to its reexamination *requests* can be obtained through the unopposed deposition of ***Ms. Waack who (unlike Messrs. Cagle and Lechtenberger) <u>prepared and submitted</u>*** Weatherford's *reexamination requests to the Patent Office* and thereby made public statements related to Weatherford's positions regarding the invalidity of Davis-Lynch's patents based on certain printed publications.[30]

Clearly, according to Ms. Waack, this was not the case.  Instead, Ms. Waack testified that litigation counsel prepared the reexamination requests to the PTO.  Again, Weatherford and Howrey's motivation to conceal their violation has no bounds and includes making misrepresentations to this Court.

Weatherford and Howrey clearly violated the Agreed Protective Order by allowing counsel of record with access to protected materials to prepare the requests for reexamination of the '824 and '336 patents.  Further, they violated the Agreed Protective Order when Mr. Cagle, Weatherford's attorney-in-charge, failed to establish a "screen" – which he had stressed to Mr. Arnold.  While violating, and after violating, the Agreed Protective Order, Weatherford and Howrey actively took steps to conceal their violations by (1) having Ms. Waack sign the requests for reexamination and (2) misrepresenting to the Court the involvement of Ms. Waack in the preparation of the requests.

## B.    <u>Legal Analysis</u>

For violating a protective order, courts have found contempt and imposed sanctions against the violating party.  This court previously addressed the procedural issues related to a party violating a court order.  In *Tivo*, this court held that violating a court's order did not raise

---

[30] *See* Weatherford's Reply in Support of its Motion to Quash Depositions of its Counsel of Record or in the Alternative for Protective Order [Doc.183] at 3-4 (footnotes omitted and bold, italicized emphasis added).

any issue unique to patent law, and therefore, the law of the regional circuit applied.[31]  This court further held that in order to establish civil contempt, it is only necessary to show the following: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[32]  The movant must prove these elements by clear and convincing evidence.[33]

As shown above, there was a protective order in effect from the First Case, which limited the activities of litigation counsel.  These limitations included a prosecution bar which included reexaminations.  The protective order also required that the attorney-in-charge maintain a "screen."  Weatherford and Howrey violated both of these provisions by having litigation counsel in the First Case prepare the requests for reexamination of the '824 and '336 patents. Weatherford and Howrey are in civil contempt of the Court's protective order in the First Case. This is further confirmed by evaluating other cases with similar circumstances.

In *Visto*, the defendant asserted that the plaintiff had violated the court's protective order.[34]  The protective order in that case, just as here, contained limitations on the use of protected materials as well as a prosecution bar.[35]  Although there was not a clarification by the *Visto* court that the prosecution bar applied to reexaminations as was the case here, the court held that the prosecution bar did extend to reexaminations.[36]

After reviewing the facts, it was determined that plaintiff's counsel had received attorney's eyes only materials.[37]  It was also found that this same attorney had participated in patent prosecution activities as well as reexamination proceedings related to the patent-at-issue in

---

[31] *See Tivo, Inc. v. Dish Network Corp.*, 2009 WL 1562872 at 18* (E.D. Tex. June 2, 2009) (citing *Eagle Comtronics, Inc. v. Arrow Commc'n Labs, Inc.*, 305 F.2d 1303, 1313 (Fed. Cir. 2002)).
[32] *Id.* (quoting *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)).
[33] *See id.* (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).
[34] *See Visto Corp. v. Seven Networks, Inc.*, 2006 WL 3741891 at 5* (E.D. Tex. Dec. 19, 2006).
[35] *See id.*
[36] *See id.*
[37] *See id.* at 6*.

that case.[38]   The law firm involved was having another attorney with the firm sign the PTO filings.[39]

The court in *Visto* held that the protective order had been violated due to these activities and that plaintiff's ***counsel had sought to conceal the violation by having another attorney sign the materials filed with the PTO*.**[40]   As a sanction, the court stayed the injunction awarded to the plaintiff pending any appeal.[41]   Further, the court barred plaintiff's counsel from further receipt of confidential information ***effectively disallowing counsel from further participation in the case.*[42]  *In fact, the law firm seeking sanctions in Visto was none other than Howrey, defense counsel here, and Weatherford's local counsel in this matter*.**[43]

The circumstances in *Visto* and the circumstances here are very similar.  Both are patent infringement cases addressing the violation of a prosecution bar contained in a protective order.  Both cases involve the concealment of those activities by litigation counsel by having another attorney sign filings with the PTO.  Given these similarities, this Court should find Weatherford and Howrey in civil contempt and impose sanctions just as in the *Visto* case.   Here, the appropriate sanction would be to impose sanctions against Weatherford and require Howrey to immediately return all protected materials produced by Davis-Lynch as well as forbid Howrey future access to these materials.

Further, courts have also determined that violations of confidentiality-related protective orders are meritorious of monetary sanctions.  These sanctions include assessments of reasonable attorney fees and costs as well as civil contempt sanctions.  Awards of attorney fees and costs

---

[38] *See id.*
[39] *See id.* at 6-7*.
[40] *See Visto*, 2006 WL 3741891 at 7*.
[41] *See id.* at 8*.
[42] *See id.*
[43] It should also be noted that this Court has relied upon *Visto* in subsequent decisions.  *See Document Generation Corp. v. Allscripts, LLC*, 2009 WL 1766096 at 3*, n.2 (E.D. Tex. June 23, 2009).

deal at a minimum with making the movant whole when activity inconsistent with the protective order must be addressed by a court.  In one case, inadvertent disclosures merited an award of all the fees and costs associated with prosecuting the motion for sanctions.[44]

Even inadvertent violations can be remedied through civil contempt penalties.[45]  Less innocent failures to comply are, of course, similarly sanctionable.[46]  The Ninth Circuit has explained that "a sanction for "[c]ivil contempt is characterized by the court's desire to ... compensate the contemnor's adversary for the injuries which result from the noncompliance."[47] Here, there is no question that there was an order in place, that the order required counsel for Weatherford to abstain from participating in any reexamination proceedings, and counsel for Weatherford failed to comply.  As no further showing is required, this Court should impose civil contempt sanctions equaling the amount of harm that Davis-Lynch has suffered based on Weatherford and Howrey's noncompliance.

Particularly egregious violations of confidentiality-related protective orders such as here have resulted in severe sanctions.  In one case, the Northern District of Ohio dismissed all counterclaims by the defendant whose counsel breached a protective order and disqualified defense counsel for refusing to make disclosures that indicated that defense counsel should be ineligible to receive confidential materials.[48]

The standard set by the Fifth Circuit in determining civil contempt is clear.  It is also clear that when that standard is applied to Weatherford and Howrey's behavior, they are in contempt of the Court's Agreed Protective Order in the First Case.  As shown from the cases

---

[44] *See Kooima v. Zacklift International, Inc.*, 209 F.R.D. 444, 446 (D. S.D. 2002).

[45] *See Frazier v. Layne Christensen Co.*, 2005 WL 372253, *4-5 (W.D. Wis. 2005).

[46] *See generally On Command Video Corp.*, 976 F.Supp 917, 923-4 (N.D. Cal. 1997) (while not fixing value of sanctions, the court expressed its displeasure at clear violations of protective order in reversing finding of no contempt).

[47] *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366 (9th Cir. 1987) (citing *Falstaff Brewing Corp. v. Miller Brewing Corp.*, 702 F.2d 770, 778 (9th Cir. 1983)).

[48] *See Field Turf, USA v. Sports Const. Group*, 2007 WL 4412855, *3-7 (N.D. Ohio 2007).

cited above, the appropriate sanction for such blatant violations of the court's protective order for advantage must be harsh.   Here, the appropriate sanction would be to impose severe sanctions against Weatherford and require Howrey to immediately return all protected materials produced by Davis-Lynch as well as forbid Howrey future access to these materials.   Further, Davis-Lynch should be compensated for the time and expense of filing this Motion and all expenses incurred by Davis-Lynch as a result of its compliance with the Agreed Protective Order, including the increased costs related to retaining other patent counsel to handle the reexamination.   These sanctions are further justified by Weatherford's pattern of behavior in this case.

### C.        **Weatherford's Pattern of Behavior**

Unfortunately, Weatherford and Howrey's violation of the Court's Agreed Protective Order is merely one in a series of activities undertaken for unfair advantage.   It has been become routine for Weatherford and Howrey to use this Court to obtain orders favorable to them and immediately following the issuance of such orders, completely disregard the representations previously made to this Court.   Weatherford and Howrey's disingenuous, opposing positions on matters are sanctionable.

Earlier in this case, Weatherford took the position that additional models of its auto-fill float equipment were different products which Weatherford had no idea were involved in this case.   At the hearing before this Court, Weatherford convinced this Court to exclude the additional models from this case by arguing as follows:

> THE COURT:  Let me ask you this:  They are saying -- their contention is these new products, new model numbers, they're essentially just that, that there are really no difference, they're just new model numbers, they operate essentially the same way, at least, I guess, insofar as the claims they are accusing the products of infringing.  What's your position?

> MR. LECHTENBERGER:  If that's the case, Your Honor, why couldn't they identify the 55 models earlier when they identified the other three?  If they're

> so similar, they should have easily been able to comply with the patent rules which requires them to identify each model by name.  If they're that similar, if that's their position, ***it's not our position***, it's their position.[49]  But if that's the case, there's no excuse for them to wait until December to tell us that when we're just weeks away from a Markman ruling and we've lost a year's worth of discovery on issues that we could have done since February of 2008 if they had complied with the patent rules.

Weatherford took this position despite the fact that the parties were specifically conducting discovery on these additional models and had participated in mediation where all of these models were at issue.[50]  Once it prevailed on this argument, Weatherford successfully argued to this Court that Davis-Lynch should not be permitted to obtain discovery on the additional models because they were not "relevant to any claim or defense."[51]

After successfully convincing this Court that (1) Weatherford was completely surprised and prejudiced by Davis-Lynch's assertion of infringement of the additional models and (2) discovery on the additional models was not proper because the additional models were not relevant to any claims or defenses in this matter, Weatherford then began claiming that the additional models were the same as the already listed models.[52]  Once Weatherford obtained the ***extraordinary*** relief from this Court eliminating the additional models from this case, Davis-Lynch filed a second suit against Weatherford and other entities for patent infringement.  Not surprisingly, Weatherford tells a different story to that Court seeking to capitalize on the order it obtained from this Court based upon blatant misrepresentations.[53]

---

[49] *See* **Exhibit 13** at 53-54 (emphasis added).

[50] Davis-Lynch contended, and still contends, that it was diligently investigating the roughly 51 other models of auto-fill float equipment it had been told were sold in May 2008.  Part of this investigation was reviewing the hundreds of thousands of pages of documents produced by Weatherford looking for all relevant technical drawings of these various models.

[51] *See* Doc.102 at 5-11.

[52] In its Rule 12(b)(6) Motion in *Davis-Lynch, Inc. v. Hilcorp Energy Co., et al.*, Case No. 6:09-cv-00168-LED, Weatherford argues that Davis-Lynch claims "infringement of the same patent by the same accused technology."  Doc.21 at 12.

[53] *See id.*

Further, after refusing to conduct further discovery on the additional models, Weatherford suddenly found "relevance" in the excluded models in an effort to attack Davis-Lynch's damage model. Through a rebuttal report by Weatherford's expert, Dr. Fleckenstein, Weatherford argues as follows:

40.     "Mr. Wooley (Davis-Lynch expert) states that the alternatives for a down hole tool such as the Davis-Lynch patented float equipment are 'more limited' than those related to the Weatherford-Varco license.  However, Mr. Wooley provides no examples regarding what these alternatives are and does not quantify these alternatives…..

41.     Further, Mr. Wooley ignores the fact that Weatherford's other large bore and mid bore auto-fill equipment models constitute acceptable non-infringing alternatives.  While I am aware of dozens of such models, examples would include Weatherford's models L42W0, L42WA, L45WP and L46 WP, which operate essentially the same as accused models L42A0, L42AA, L45AP, and L46AP, respectively.  The only relevant difference in these alternative models from the accused models is their substitution of composite material for aluminum material.   These models, in addition to the numerous other models in Weatherford's large bore and mid bore product lines, are available alternatives that could be used in lieu of the accused models and still provide the same benefits alleged by Davis-Lynch, such as the reduction of surge pressure and debris tolerance.[54]

This, after Weatherford previously argued that "the excluded products are no longer 'relevant to any party's claim or defense'" when arguing that Davis-Lynch should be prevented from conducting discovery on any models other than the four accused models and claiming undue surprise and prejudice in order to have this Court exclude the additional models.[55]  What Weatherford and Howrey misrepresented in this case in order to successfully exclude the additional models and prohibit discovery on them is reprehensible and sanctionable under any standard.  Weatherford's method of operation is clear.  Weatherford and Howrey will not hesitate to make misrepresentations to the Court to obtain extraordinary relief and then change their position as it benefits their cause.

---

[54] *See* **Exhibit 14** at 14.
[55] Weatherford Response [Doc.102] at 6.

As mentioned above, Weatherford and Howrey actively participated and convinced the Court to enter and clarify the Agreed Protective Order and then, soon after obtaining its requested relief, violated it.  Mr. Cagle clearly worked with his client to develop an affidavit which Mr. Cagle specifically requested be provided to the PTO as part of the reexamination proceedings of the '824 and '336 patents.

Further, Weatherford and Howrey's use of the improperly prepared requests for reexamination did not end with their filing with the PTO.  Years later, Weatherford's invalidity "expert," Dr. Fleckenstein, copied huge sections of the requests into his invalidity report verbatim.  The following is an example:



| Excerpt from Howrey's Request for Reexamination of the '336 patent | Excerpt from Fleckenstein Invalidity Report with copied portions highlighted in pink |
|---|---|

The wholesale copying of Howrey's request for reexamination into Fleckenstein's invalidity report, and Fleckenstein's citation to the additional models as relevant to Weatherford's damages opinion will be addressed separately by a Motion to Exclude Dr. Fleckenstein as an expert in this case, but it does represent the pattern of behavior by Weatherford and Howrey in this case.

Consistent with this behavior is Weatherford's attempt to use protected materials from other cases in this case.  In the deposition of Alan Ratliff, Davis-Lynch's damages expert, Weatherford sought to ask Mr. Ratliff questions about one of his reports from a previous case.[56] Mr. Ratliff had acted as a damages expert in this other case which also involved Weatherford and which had Howrey as Weatherford's counsel.[57]  Mr. Ratliff, as well as Davis-Lynch's counsel, objected to using this report because of its protected nature in a separate case, but Weatherford's counsel moved forward with questions on the report anyway.[58]  This action by Weatherford's counsel is merely one more indication of Weatherford's disrespect for maintaining the protected nature of materials under a protective order.

These activities by Weatherford and Howrey indicate a pattern of behavior where orders are disregarded and factual positions are shifted for convenience rather than reflecting the truth. There is no question that Weatherford and Howrey violated this Court's protective order and that they should be held in contempt and sanctioned for that violation.  However, this Court should also consider the other activities undertaken by Weatherford and Howrey for unfair advantage in this case when imposing sanctions.

As a result of Weatherford and Howrey's violations and continued misrepresentations to this Court, Davis-Lynch has been severely prejudiced and damaged.  The only appropriate remedy is to sanction Weatherford and Howrey as requested herein.

---

[56] *See* **Exhibit 15** which is the Deposition of Alan Ratliff dated July 21, 2009, at 136:16-139:24.
[57] *See id.*
[58] *See id.*

**IV.    CONCLUSION**

For the reasons stated above, Davis-Lynch respectfully requests that this Court find and order the following:

- Weatherford and Howrey are in civil contempt by violating a protective order in this case.

- Weatherford's counterclaims and affirmative defenses are dismissed as a sanction for its violation of a protective order.

- Weatherford and Howrey are sanctioned for their civil contempt in an amount to be determined by this Court.

- Howrey is required to immediately return all protected materials produced by Davis-Lynch as well as forbid Howrey future access to these materials.

- The entire Howrey firm should be ordered not to participate in the consultation of, preparation or prosecution of any patent application, including requests for reexaminations and reexaminations, relating to methods and apparatus used in running and/or cementing casing and/or liners, including but not limited to valving systems, float equipment, guide shoes, cement retainers, running tools, and liner hangers during any time prior to the expiration of eighteen (18) months following the final resolution of this case (including any appeals).

Respectfully submitted,


/s/ Ernest W. Boyd
Ernest W. Boyd
State Bar No. 00783694
Attorney-in-Charge
MehaffyWeber, P.C.
One Allen Center
500 Dallas Street, Suite 1200
Houston, Texas 77002
Telephone: (713) 655-1200
Facsimile: (713) 655-0222
butchboyd@mehaffyweber.com

Of Counsel:
Eric M. Adams
State Bar No. 24031686
ericadams@mehaffyweber.com
Corey J. Seel
State Bar No. 24037465
coreyseel@mehaffyweber.com
MehaffyWeber, P.C.
One Allen Center
500 Dallas Street, Suite 1200
Houston, Texas 77002
Telephone: (713) 655-1200
Facsimile: (713) 655-0222

Local Counsel:
Andy Tindel
State Bar No. 20054500
atindel@andytindel.com
Provost Umphrey Law Firm, LLP
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909


**ATTORNEYS FOR PLAINTIFF
DAVIS-LYNCH, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:


Stephen H. Cagle
J. Dean Lechtenberger
Joan E. Beckner
Eric Schlichter
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002-5242

S. Calvin Capshaw
Elizabeth L. DeRieux
Damon Rambin
Capshaw DeRieux, LLP
P.O. Box 3999
Longview, Texas 75606-3999

**ATTONEYS FOR DEFENDANT**
**WEATHERFORD INT'L, INC.**


/s/ Ernest W. Boyd
Ernest W. Boyd

## <u>CERTIFICATE OF CONFERENCE REQUIREMENT</u>

According to Local Rule CV-7(i), certain motions do not require a certificate of conference.  The purpose of the conference requirement is to avoid burdening the court with issues that could be resolved separately by the parties.  Davis-Lynch asserts that this is a dispositive motion with regard to Weatherford's claims and defenses in this case and that the parties must bring these issues to the court for resolution.  Further, there is no opportunity for the parties to resolve Weatherford's previous violations of the Court's protective order.  Therefore, the conference requirement does not apply to this Motion.  However, counsel for Davis-Lynch did contact counsel for Weatherford who stated that they were opposed to this Motion.


/s/ Eric Adams_____
Eric Adams

## <u>CERTIFICATE OF AUTHORIZATION TO FILE SEALED DOCUMENTS</u>

Pursuant to E.D. Tex. Loc. Ct. R. CV-5(a)(7(A), I hereby certify that Exhibits 6 and 15 are authorized to be filed under seal because the Court has granted authorization to file sealed documents in this action by virtue of the Protective Order previously entered herein.


/s/ Ernest W. Boyd
Ernest W. Boyd