IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

DAVIS-LYNCH, INC.,

        Plaintiff,

    v.

WEATHERFORD INTERNATIONAL, INC.,

        Defendant.

CIVIL ACTION NO. 6:04-CV-54

Jury Demanded

**WEATHERFORD INTERNATIONAL, INC.'S OPPOSITION TO
PLAINTIFF'S SECOND MOTION TO STAY AND
ALTERNATIVE MOTION FOR DISMISSAL WITHOUT PREJUDICE**

Defendant Weatherford International, Inc. ("Weatherford") opposes Plaintiff's Second Motion to Stay and Alternative Motion for Dismissal Without Prejudice. Weatherford incorporates by reference the arguments and authorities presented in its briefs (Doc. Nos. 84 and 92) filed in opposition to Plaintiff's First Motion to Stay.[1] Additionally, Weatherford respectfully would show the Court the following encapsulation of Weatherford's prior briefing, and new argument, in specific response to Plaintiff's new motions and in view of its recently filed requests for reexamination of U.S. Patent Nos. 6,401,824 ("the '824 patent") and 6,679,336 ("the '336 patent").

## I.    PLAINTIFF'S SECOND MOTION TO STAY SHOULD BE DENIED

Courts may consider a "number of factors" to determine whether to deny a stay pending the outcome of reexamination, including:  (1) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party"; (2) the stage of discovery and "whether a trial date has been set"; (3) "whether a stay will simplify the issues in question and trial of the case"; and (4)

---

[1] This Court denied Plaintiff's First Motion to Stay as premature (Doc. No. 98).  Plaintiff's Second Motion to Stay likewise is premature in the sense that the U.S. Patent and Trademark Office has yet to decide whether to reexamine the patents-in-suit.  *See* 35 U.S.C. §§ 303(a), 304 (Director has three months from filing of reexamination request to determine whether to order reexamination).  Nevertheless, for purposes of this opposition, Weatherford assumes that the PTO ultimately will decide to reexamine the patents-in-suit.

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com



EXHIBIT

11

whether the moving party is abusing the reexamination process. *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *Agar Corp. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126, 1127 (S.D. Tex. 1997); *Freeman v. Minn. Mining & Mfg. Co.*, 661 F. Supp. 886, 888 (D. Del. 1987).[2] A stay is not warranted in this case because (1) a stay will irrevocably prejudice Weatherford in this litigation and in the competitive marketplace; (2) with trial just over six months away and significant discovery completed, this litigation has progressed too far to allow an indefinite stay; (3) reexamination will have limited or no benefit as the U.S. Patent and Trademark Office ("PTO") is not empowered to address Weatherford's key defenses; and/or (4) Davis-Lynch's reexamination requests constitute an abuse of the reexamination process in a number of ways.

## A.   A STAY WILL RESULT IN PREJUDICE TO WEATHERFORD.

A stay will irrevocably prejudice Weatherford if granted at this advanced stage of litigation. Moreover, a stay will prejudice Weatherford's interest in a prompt resolution of this case, as well as its ability to discover necessary evidence. Additionally, during the period of stay, Weatherford will be exposed to competitive harm and will be forced to incur additional costs related to the necessity of filing third party reexamination requests.

### 1.   Late Stage of Litigation

Courts consider the "stage of the litigation at which the motion to stay is requested" and "are inclined to deny a stay when the litigation is at a later stage, such as when the case has been set for trial and the discovery phase has almost been completed." *Agar*, 983 F. Supp. at 1128. This case has been pending for nearly a year. Discovery pursuant to the Patent Rules (P.R.) has been ongoing. The parties have already exchanged preliminary disclosures regarding infringement (P.R. 3-1 and 3-2), invalidity (P.R. 3-3 and 3-4), and claim constructions (P.R. 4-1 and 4-2), and have

---

[2] Another factor sometimes considered is any benefit of PTO expertise. *Agar*, 983 F. Supp. at 1127. However, this factor does not weigh toward a stay because (1) this Court previously analyzed patent validity in light of the prior art in this case (Doc. No. 51), and (2) the technology here "is relatively easy to understand." (Doc. No. 67, at 2.)

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

filed a Joint Claim Construction Statement (P.R. 4-3). Both parties also have served and responded to lengthy documents requests, and Weatherford has served requests for admissions. Discovery on claim construction is closed (P.R. 4-4), and the April 2005 discovery deadline is quickly approaching. (*See* Doc. No. 63.) The parties already have incurred the heavy cost of document review and production,[3] which has laid the groundwork for timely completion of all remaining (deposition and expert) discovery in accordance with the Second Amended Docket Control Order/Scheduling Order. (*Id.*) Thus "[a]lthough the discovery stage has not yet been completed, it has also not just begun." *Agar*, 983 F. Supp. at 1128.

*Trial in this case is currently set for July 2005.* We are now "too far along the road to justify halting the journey while [the patentee] explores an alternate route." *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d (BNA) 1319, 1320 (N.D. Ill. 1990) (Doc. No. 84 ex. 3); *see also Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d (BNA) 1718, 1719-20 (E.D. Cal. 1993) (Doc. No. 84 ex. 2) (denying stay where "Plaintiff chose this forum, forced [defendant] to expend time and money in responding to a motion for preliminary injunction . . . , and [only] now, after the litigation has progressed almost a year . . . , seeks reexamination of his patent"). In other words, Davis-Lynch's delay in filing its reexamination requests and motion to stay until this advanced stage of litigation is sufficient reason to deny a stay. *Trial of this case can and should proceed as currently scheduled.*

## 2.    Interests in Prompt Resolution and Ability to Discover Necessary Evidence

Weatherford has a strong interest in the "just, speedy, and inexpensive" determination of this lawsuit. *See* FED. R. CIV. P. 1. A delay of discovery would be especially prejudicial here, as many of the relevant events regarding the prior art occurred over twenty years ago. (*See, e.g.*, Doc. No. 39 ex. 9, app. at A169.) Witnesses may become unavailable or die, their memories may further

---

[3] For example, Weatherford's counsel gathered (from multiple offices), reviewed (for privilege and relevance), coded (for use at depositions and trial), and produced over 16,700 document pages in response to Davis-Lynch's document requests, and also reviewed and coded the approximately 2,800 document pages produced by Davis-Lynch.

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

fade, and evidence may be lost while the PTO reexamines Davis-Lynch's patents. *See Gladish*, 29 U.S.P.Q.2d (BNA) at 1720 (denying plaintiff's motion to stay based in part on defendant's "strong interest in concluding this lawsuit without delay"); *Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F. Supp. 516, 519 (E.D. Wash. 1991) ("[I]t would not be fair to allow plaintiff to institute this action, agree to cutoff dates, have defendant conduct extensive discovery and then allow plaintiff to file for reexamination of the patent and stay this action."). Additionally, discovery to date has yielded very little evidentiary support for the named inventors' alleged conception and reduction to practice of the claims asserted against Weatherford; a stay will prejudice Weatherford's ability to pursue further discovery of these matters.

### 3.      Competitive Harm

Having an infringement lawsuit hanging over its head for several years will also unfairly prejudice Weatherford in its business activities. Davis-Lynch does not deny that it has published statements to Weatherford's customers and potential customers regarding this lawsuit and Davis-Lynch's position against Weatherford in an effort to inflict competitive harm. (*See* Doc. No. 90.) A stay will allow Davis-Lynch to continue this practice, and thereby to extend the competitive utility of its patents as a marketing tool, for years to come—despite both this court's preliminary finding and Davis-Lynch's apparent concurrence that most if not all of the asserted claims of the patents-in-suit, as originally issued, are likely invalid. Weatherford should not be subjected to this competitive disadvantage due to Davis-Lynch's unjustified dilatory tactics. *Freeman*, 661 F. Supp. at 888; *Gladish*, 29 U.S.P.Q.2d (BNA) at 1720 (noting defendant's "strong interest" in avoiding delay where its customers apparently were informed of plaintiff's infringement claim).

### 4.      Third Party Reexamination Requests

Finally, because Davis-Lynch's reexamination requests (1) do not include all of the available prior art, and (2) do not merely distinguish the prior art, which is allowed, but instead

4

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

*distort* the prior art, which is not, a delay of case resolution in this Court will further prejudice Weatherford by necessitating that Weatherford prepare and file its own requests for reexamination with the PTO.

**B.  A STAY WILL *NOT* SIMPLIFY THE ISSUES AND TRIAL OF THIS CASE.**

**1.  Reexamination Cannot Resolve All Issues Before the Court.**

Courts recognize that a stay of litigation is not warranted where the "reexamination will not resolve everything." *Enprotech*, 15 U.S.P.Q.2d (BNA) at 1320 (observing that "if any of the claims survived [reexamination] we would be right back here to litigate the . . . inequitable conduct [claim]"). But in a reexamination, the PTO is ***not authorized*** to "resolve everything"; for example, it may not consider whether a public use or sale invalidates a patent, or whether inequitable or fraudulent conduct renders a patent unenforceable. *Manual of Patent Examining Procedure* ("MPEP") § 2216 (8th ed., rev. 2, May 2004) ("Questions relating to grounds of rejection other than those based on prior art patents or printed publications . . . will not be considered by the examiner . . . . Examples of such questions that will not be considered are public use, on sale, and fraud."); *id.* §§ 2217, 2258 (same).

In this case, a reexamination will leave numerous issues undecided, such as Weatherford's key claims and defenses of invalidity due to public use or sale (which includes offer for sale) under 35 U.S.C. § 102(b), unenforceability due to inequitable conduct or fraud before the PTO,[4] attorney's fees, and noninfringement. (*See, e.g.*, Doc. No. 39, at 15-19; Doc. No. 102, at 7-11). *See also Gladish*, 29 U.S.P.Q.2d (BNA) at 1720. Rather than conserve time and resources, a stay of this action will only cause further delay in resolving the merits of the many issues that can only be resolved by this Court.

---

[4] Weatherford reserves the right to request leave to amend its second amended answer to extend the inequitable conduct defense and counterclaim to the '824 patent, in view of certain (mis)representations knowingly made to the PTO, with intent to deceive, in Davis-Lynch's reexamination requests.

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

Moreover, Davis-Lynch's requests for reexamination do not even address all of the patent claims at issue here, thereby leaving more open issues.  For example, Davis-Lynch did not request reexamination of asserted claims 14 or 17 of the '336 patent.  The request for reexamination "must set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested."  35 U.S.C. § 302.  Davis-Lynch may argue that it does not matter which claims it includes in its request, because the MPEP provides that once a substantial new question of patentability is found, the examination "will normally cover all claims."  MPEP § 2243. But in the absence of any argument on some claims, the examiner is likely to merely focus on the claims asserted for reexamination by Davis-Lynch.

### 2.    A Prior Invalidity Finding by This Court Will Bind the PTO; But A Prior Invalidity Finding by the PTO Will *Not* Bind This Court.

"Parallel prosecution" of patents concurrently involved in litigation is permitted and encouraged under current law.  *See* 35 U.S.C. § 302; MPEP § 2286; *Freeman*, 661 F. Supp. at 888. In this case, trial is set for July 2005.  If the PTO takes an average amount of time in conducting the reexaminations (about 21 months), that process will not be completed until at least September 2006 (not counting any appeal).  Thus, final judgment likely will be rendered by this Court long before the PTO completes the reexaminations, and it is likely that the Court and the parties will not need to address the PTO reexaminations at all.  *See Cognex Corp. v. Nat'l Instruments Corp.*, No. Civ.A. 00-442-JJF, 2001 WL 34368283, at *2 (D. Del. June 29, 2001) (Doc. No. 84 ex. 5) (denying stay where the court concluded, based on PTO statistics, "that the trial in this case will likely be completed prior to any action by the PTO").  In fact, if this Court were to enter a final judgment of invalidity, it would be binding on the PTO and the *reexamination* would be terminated.  MPEP § 2286 (explaining that "the claims held invalid or unenforceable will be withdrawn from consideration in the reexamination"); *id.* § 2242 (same).

Even in the unlikely event that the PTO completes the reexaminations first and upholds the

DM_US\8084841.v1
PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

validity of the relevant claims, this Court would not be bound by that result and may still properly

invalidate those claims:

> The awkwardness presumed to result if the PTO and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions. Furthermore, we see ***nothing untoward about the PTO upholding the validity of a reexamined patent which the district court later finds invalid***. This is essentially what occurs when a court finds a patent invalid after the PTO has granted it.

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988) (emphasis added); *see also* MPEP §

2242. Thus, even if the PTO declines to find a substantial new question of patentability or upholds

the validity of one or more claims, the decision will not end this matter.  Weatherford may still

invalidate those claims in this Court. *Ethicon*, 849 F.2d at 1428.

## C.   DAVIS-LYNCH'S REEXAMINATION REQUESTS ARE AN ABUSE OF THE REEXAMINATION PROCESS.

### 1.   Delay in Filing Reexamination Requests Despite Early Knowledge of Prior Art

The timing of Davis-Lynch's reexamination requests highlights the fact that Davis-Lynch is

forum-shopping.  Courts consider applying for reexamination after months-long awareness of prior

art to be an abuse of the reexamination process that weighs strongly in favor of denying a stay.

*Freeman*, 661 F. Supp. at 888; *see also Cognex*, 2001 WL 34368283, at *2 (denying stay when

plaintiff "had at least some of the documents it presented to the PTO . . . for quite some time" but

waited until six months before trial to seek reexamination); *Xerox*, 69 F. Supp. 2d at 408 (denying

stay in part because movant became aware of the prior art but waited until after court's adverse

ruling on summary judgment motion to request reexamination); *Remington Arms Co. v. Modern

Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920, at *1-*3 (M.D.N.C. Dec. 17, 1998)

(Doc. No. 84 ex. 1) (finding "unjustified delay" in requesting reexamination a "most compelling"

reason to deny stay when defendant became "aware of the prior art as early as May 5, 1998, if not

sooner" but delayed seeking reexamination until August 1998); *Gladish*, 29 U.S.P.Q.2d (BNA) at

DM_US\8084841.v1
PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

1719-20 (denying stay where plaintiff sought reexamination based on prior art known to plaintiff six months before it filed suit and moved for preliminary injunction).

Here, Davis-Lynch had knowledge of the prior art items cited in its recent reexamination requests for months or in some cases *years* before filing suit and/or its reexamination requests.[5] Yet despite this early knowledge, Davis-Lynch delayed seeking reexamination until nearly a year after filing suit, months after it obtained disclosure of Weatherford's invalidity positions and claim constructions, and months after this Court's adverse preliminary injunction ruling. Only now, a mere six months before trial, does Davis-Lynch seek an *ex parte* reexamination in the PTO and a concurrent stay of proceedings[6] in this Court. (In contrast, defendant Weatherford wants to see this matter through to speedy resolution.) Under these facts, denial of stay is warranted.

### 2.    *Ex Parte* Abuses

Courts generally deny a stay where, if granted, it would allow the movant to use reexamination as a "mere dilatory tactic" to delay or avoid confrontation. *Freeman*, 661 F. Supp. at 888. Reexamination is a defined process in which an interested party (including the patentee) may request that the PTO reexamine one or more claims in an issued patent based on "a substantial new question of patentability" presented by a "prior patent or printed publication." 35 U.S.C. §§ 302-03; MPEP §§ 2216-17. If the PTO agrees there is a "substantial new question of patentability," the PTO will reexamine the patent claims in light of the prior art to determine if they are patentable.

---

[5] Examples of prior art Davis-Lynch knew about for *years* before filing its reexamination requests include but are not limited to '824 reexamination request items 1, 20-21, and 29-31.
- Davis-Lynch was made aware of and provided a copy of '824 reexamination item 1 by Weatherford in a meeting in or before April 2003, in which Weatherford also explained why this reference was a bar to the patentability of the claims of the '824 patent, which had issued on June 11, 2002;
- Items 20-21 are issued patents that share named inventors with the patents-in-suit; and
- Items 30-31 are patents that would have surfaced during a PTO patent database search (CCL/166/$ AND SPEC/flapper) represented to have been made in conjunction with the petitions to make special. (*See, e.g.*, Doc. No. 39, app. at A25 ('336 pet. to make special).

Examples of prior art Davis-Lynch knew about for five to nine *months* before filing its reexamination requests include but are not limited to '824 reexamination request items 3, 18, and 25 (*see* Doc. No. 84 ex. 4 (Mar. 12, 2004)), and items 2 and 4-17 (*see* Doc. No. 39 (July 30, 2004); P.R. 3-3 disclosure (July 16, 2004)).

DM_US\8084841.v1
PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

MPEP §§ 2209, 2258. One reason the reexamination process is an effective tool for the patentee is because under PTO rules it is an *ex parte* dialog, exclusively between the patentee and the PTO, regardless of who files a reexamination request. 35 U.S.C. § 305; MPEP § 2209. Other than filing its own initial reexamination request—which Weatherford likely will do—a third party has no opportunity to participate. *See* 37 C.F.R. § 1.550(g); MPEP § 2254.[7]  Ordinarily, this is of little consequence. However, in this case, Davis-Lynch's clear **abuse** of the *ex parte* nature of the reexamination process suggests dilatory intent (stated differently, a continuation of Davis-Lynch's inequitable conduct) that warrants a denial of stay pending reexamination.

a. <u>Failure to Cite Key Prior Art in Reexamination Request</u>

First, Davis-Lynch selectively filed some, but not all, of the prior art Weatherford raised in this suit in its reexamination requests. For example, items 1 and 2 of Davis-Lynch's '824 reexamination request—Baker Oil Tools' Cement Float Shoe Flapper Valve Insert Assembly (collectively "the Baker reference")—were not likewise disclosed in the Davis-Lynch '336 reexamination request. Davis-Lynch may claim that it did not submit the Baker reference as prior art "presenting a substantial new question of patentability" because it was "old art," that is, "art . . . previously cited/considered in an earlier concluded [PTO] examination of the ['336] patent (e.g., in the examination of the application for the patent)." MPEP § 2258.01 (defining "old art"; citing *In re Hiniker*, 150 F.3d 1362, 1365-66 (Fed. Cir. 1998)). Yet significantly, this key prior art was among those references later deemed by this Court to "at least appear to read on" the '336 patent claims at the preliminary injunction stage, and lies at the heart of Weatherford's claim for Davis-Lynch's counsel's inequitable conduct in '336 patent prosecution.

---

[6] Or case dismissal without prejudice (*see* Section II of this Opposition), which is effectively the same as a stay.

[7] When reexaminations are filed by both a third party requester and the patentee, the PTO normally will merge the co-pending reexamination proceedings. *See* MPEP § 2283. Of particular danger to non-patentee third party requesters are *ex parte* telephonic interviews between patentee and examiner, which the patentee must reduce to summary statements for submission. *See* 37 C.F.R. § 1.560(b); MPEP § 2281; Paul Morgan & Bruce Stoner, *Reexamination vs. Litigation – Making Intelligent Decisions in Challenging Patent Validity*, 86 J. PAT. & TRADEMARK OFF. SOC'Y 441, 455 (2004)

DM_US\8084841.v1
PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

Davis-Lynch is well aware of Weatherford's contentions regarding Davis-Lynch's prior mishandling of the Baker reference before the PTO. Specifically, after Weatherford provided the Baker reference to Davis-Lynch and explained its relevance as a bar to patentability,[8] Davis-Lynch's legal representative first withheld the Baker reference from the PTO for months, then ultimately disclosed it to the PTO on July 29, 2003, near the end of the prosecution of the '336 application. The Baker reference discloses or "reads on" the assembly of components claimed by the '336 patent and its essential element of "two simultaneously operable flapper valves that may be simultaneously converted from the fill mode to the back pressure mode," and is used for exactly the same purposes as the '336 device. Even so, the original patent examiner, perhaps relying on Davis-Lynch's mystifying mischaracterization of the Baker reference as "not analogous art" that "does not teach, disclose, suggest or even contemplate the Applicant's device" and "did not contemplate the problems of surge pressure," neither "fully considered" nor explicitly "decided" a question of patentability as to a claim based on the Baker reference, and instead abruptly issued without comment a notice of allowance as to all claims on October 2, 2003. (See Doc. No. 39 at 27-30, app. at A26, A79-A80, A169.) *See also* MPEP § 2242. Thus Davis-Lynch's failure to cite the Baker reference in its '336 reexamination request suggests that once again Davis-Lynch has chosen to be less than forthcoming in the *ex parte* arena.

Davis-Lynch alternatively may claim that because the Baker reference was previously cited to the PTO in the original '336 examination, it would be merely cumulative if cited in a '336 reexamination. However, this argument, if made, would lack merit on two counts. First, Baker reference "item 2" was ***never before the PTO*** in the original '336 examination. And second, under the clear language of the PTO: "The existence of a substantial new question of patentability is ***not***

---

(indicating that the patentee may "even bring in experts (usually inadequately recorded)").

DM_US\8084841.v1

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

*precluded by the fact that a patent or printed publication was previously cited by or to the Office* or considered by the Office." MPEP § 2242.

        b.      Intentional Mischaracterization of Prior Art in Reexamination Request

        Second, in its reexamination requests Davis-Lynch apparently has continued its practice, originating with its '336 patent prosecution, of abusing the process by knowingly mischaracterizing the prior art. For example, with regard to the Baker reference submitted with its '824 reexamination request, Davis-Lynch made intentional, material mischaracterizations similar if not identical to those it made to the PTO in its original '336 patent prosecution that in part form the basis of Weatherford's inequitable conduct claim against Davis-Lynch. Again, these statements were made despite Weatherford's repeated demonstrations that each and every element of many if not all of the claims asserted in this lawsuit are disclosed in the Baker reference—and despite this Court's preliminary agreement that the Baker reference "at least appears to read on the asserted claims." (*See* Doc. No. 39; Doc. No. 51, at 3-4.)

        Specifically, in its '824 reexamination request Davis-Lynch attempts to paint the Baker reference—an assembly for a "flapper valve insert" for a "cement float shoe" used for sub-sea re-entry "with" a T.V. camera—as a "tool . . . for supporting a TV" that "is non-analogous art" and does not "teach, disclose, suggest, *nor even contemplate the structure or the functions*" of its own claimed convertible float shoe. (Pl.'s '824 Req. for *Ex Parte* Reexam., at 8 (emphasis added).) Davis-Lynch then attempts to distinguish the alleged "TV support tool" from the '824 patent's convertible float shoe device with the following statement of conjecture: "The position of the T.V. camera is not shown, but . . . it would presumably prevent or frustrate the claimed two-way flow." (*Id.*) Yet the undeniable fact remains that the Baker reference discloses and anticipates most if not

---

[8] The Baker reference was explained as a bar to patentability of the issued '824 patent, as Weatherford was unaware at the time of the meeting in or before April 2003 of the pendency of the '336 application. Even so, Davis-Lynch did not file for reexamination of the '824 patent based on the Baker reference until December 21, 2004.

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

all of the elements claimed or disclosed in the '824 patent.[9]

        c.    <u>Failure to Provide Relevant Litigation Papers with Reexamination Request</u>

Third, Davis-Lynch properly advised the PTO of the existence of this litigation and of its belief that certain prior art printed publications raise a substantial new question of patentability of certain claims. However, Davis-Lynch submitted neither this Court's decision that the very same prior art printed publications raised substantial questions as to the validity of '336 patent claims at the preliminary injunction stage, nor any of Weatherford's invalidity positions contained in papers filed in this Court, so that copies of all relevant materials from this suit will be considered. *See* MPEP § 2282 (providing that "in order to ensure a complete file, . . . the Office will, at any time, accept from any parties, for placement in the reexamination file, . . . copies of decisions or papers filed in the court from litigations or other proceedings involving the patent"); *id.* § 2207 (same).

        d.    <u>Forum Shopping</u>

                (i)    <u>To Avoid Adverse Invalidity Ruling</u>

Finally, Davis-Lynch's improper forum shopping constitutes an abuse of the reexamination process that warrants a denial of stay in this case. With knowledge of invalidating prior art, Davis-Lynch chose to file suit and move for a preliminary injunction, thereby raising the issue of patent validity—the very issue it now claims should be considered first by the PTO. (Doc. No. 28, at 26-29; Doc. No. 39, at 4-25.) This Court already has concluded at the preliminary injunction stage that Davis-Lynch failed to show a likelihood of success on patent validity and that "each piece of prior art at least appears to read on the asserted claims." (Doc. No. 51, at 3-4.) Davis-Lynch has

---

[9] That is, the Baker reference is a flapper valve insert for a cement float shoe used in running a tubular casing string from a surface position into a wellbore, and thereafter cementing the tubular casing string therein, which discloses an outer tubular affixed to a tubular string, an inner tubular positioned within the outer tubular, and two flapper valves positioned between the inner tubular and the outer tubular; the inner tubular initially positioned within the outer tubular such that it simultaneously extends through both flapper valves and maintains both in an open position; the inner tubular movable, by dropping a restriction device (i.e., a ball or dart) from the surface to the inner tubular and thereafter applying pump pressure to move the inner tubular and thereby release or close the flapper valves to permit fluid flow in only a downward direction. (*See, e.g.*, Doc. No. 39.)

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

acknowledged as much by its reexamination requests and proposed amendments.[10]   Clearly, by filing its reexamination requests, Davis-Lynch hopes to salvage its otherwise invalid patent claims in an *ex parte* forum in which its arguments will be shielded from the adversarial process and in which it can attempt to distinguish the prior art without Weatherford's full participation—all the while delaying this litigation indefinitely.

Moreover, Davis-Lynch has abused *ex parte* proceedings in the past.  During '336 patent prosecution, Davis-Lynch submitted to the PTO the Baker reference (discussed *supra*).  (Doc. No. 39 ex. 9, app. at A169.)  The Baker reference discloses an assembly containing two flapper valves that are initially held in the open position and then converted to the closed position.  (*Id.* at ex. 4 ¶¶ 9-16.)  Each and every element of many, if not all, of the claims of the '336 patent are disclosed in this reference. (*See, e.g., id.* at 11-12, 20-21.) Despite this fact, Davis-Lynch represented to the PTO that the Baker reference "is not analogous art" and "does not teach, disclose, suggest or even contemplate the Applicant's device." (*Id.* app. at A169.)  Davis-Lynch made these representations despite Weatherford having explained to Davis-Lynch in or before April 2003 how the Baker reference was prior art that invalidates the '824 patent.  Davis-Lynch attempts to intentionally mislead the PTO with a one-sided story, a course of conduct that Davis-Lynch already has shown itself willing to continue if it is allowed to shift this dispute to the PTO.

### (ii)    To Avoid Litigation Discovery (Inventorship) Issues

Allowing reexamination to proceed without the benefit of this litigation will allow Davis-Lynch to avoid certain issues of inventorship that have surfaced through litigation discovery. Davis-Lynch has produced very few documents in support of the named inventors' alleged

---

[10] Requests for reexamination must include a "statement pointing out each substantial new question of patentability based on prior patents and printed publications." 37 C.F.R. § 1.510(b)(1); MPEP §§ 2210, 2214.  Thus a request for reexamination is essentially an admission, if made by the patentee, (1) that there is a substantial new question of patentability, and (2) that submitted materials are prior art patents or printed publications.  This is why a reexamination *typically* is requested by the alleged infringer and not by the patentee.  Proposed amendments are in essence offers to cancel claims likely invalid as originally written in favor of the amended claims.  *See* Part II *infra*.

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

conception and reduction to practice of the devices and methods claimed in the patents-in-suit. Weatherford has made repeated requests for conception and reduction to practice documents, to which Davis-Lynch has responded that it has produced all of the conception and reduction documents that it has. (*See* Ex. 1.) The few documents provided (original invention disclosure, drawings, test results) list only one of the four named inventors (Jeffry Ehlinger); the original invention disclosure describes the alleged novelty as a combination of both up- and down-jets in a single device.[11]  (Ex. 2.)

Indeed, some of these documents themselves suggest there are more relevant records that exist but that are being withheld by Davis-Lynch. For example, a document dated March 4, 2000, a few days before the '824 patent filing date of March 13, 2000, states: "This equipment has been run in over 300 wells, and saved operators countless rig time . . . ." (Ex. 3.) Yet Davis-Lynch has not provided Weatherford with pre-March 13, 2000 reduction to practice records for any of these wells. Even one of the prior art items that Davis-Lynch submitted to the PTO with its recent reexamination requests, designated as '824 item 28 and '336 item 26, a Davis-Lynch drawing dated December 4, 1998, clearly is relevant but was not produced to Weatherford before Davis-Lynch filed its reexamination request based thereon. Thus it is possible that Davis-Lynch seeks a stay in order to further extend its apparent lack of cooperation with the discovery process while it takes the opportunity in the meantime to review the much larger volume of discovery materials produced to Davis-Lynch by Weatherford.

---

[11] None of Weatherford's accused devices includes a jet of any kind.

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

## II.    PLAINTIFF'S ALTERNATIVE MOTION FOR DISMISSAL WITHOUT PREJUDICE SHOULD BE DENIED

### A.    DISMISSAL WITHOUT PREJUDICE IS EFFECTIVELY THE SAME AS A STAY AND THEREFORE IS PROPERLY DENIED FOR THE SAME REASONS.

In *Inland Steel Co. v. LTV Steel Co.*, the Federal Circuit found dismissal with leave to reinstate pending the outcome of reexamination and a stay to be effectively the same. 364 F.3d 1318, 1320 (Fed. Cir. 2004); *see also L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995) ("Dismissal without prejudice in effect stayed the proceedings . . . ."). Because a stay pending reexamination and dismissal without prejudice are effectively the same, the same concerns apply; thus for any and all of the same reasons, dismissal without prejudice likewise should be denied in this case.

Any theory "that Defendants would not have a lawsuit hanging over their heads" with a dismissal without prejudice but not with a stay is based on a distinction without a difference. *See Halliburton Energy Servs., Inc. v. Weatherford Int'l, Inc.*, No. Civ.A.3:02-CV-1347-N, 2004 WL 2599454, at *1 (N.D. Tex. Nov. 11, 2004) (Doc. No. 103 ex. 2). Weatherford will still have a lawsuit hanging over its head regardless of whether this litigation's "dormant" period is labeled a stay or dismissal without prejudice. *See id.* The reality is that with a dismissal without prejudice Davis-Lynch would be able to reinstate its lawsuit in this Court—or in any other court in which it can establish jurisdiction and venue if it further seeks to avoid this Court's preliminary invalidity ruling—at any time. Any benefit to the court by granting a dismissal without prejudice to lift the "burden[] [of] a pending-but-dormant case on its docket" during reexamination, *id.* at *1 n.1, is of no matter where, as here, the balance of enumerated factors otherwise weighs strongly toward denial of stay. Accordingly, because dismissal without prejudice is effectively the same as a stay,

15

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

and for the reasons cited in support of a stay in Part I above, dismissal without prejudice also should be denied.[12]

**B.     THE UNPUBLISHED *HALLIBURTON* CASE ON WHICH DAVIS-LYNCH RELIES IS UNPUBLISHED, DISTINGUISHABLE, AND SUBJECT TO A PENDING MOTION FOR RECONSIDERATION**

Davis-Lynch's Alternative Motion relies exclusively on an unpublished decision, *Halliburton Energy Services, Inc. v. Weatherford International, Inc.*, in which another district court granted a dismissal without prejudice after the court had denied a stay pending reexamination. The case is distinguishable. The court stated that "[t]he ***entire controversy*** may be resolved . . . and at minimum . . . informed by the PTO's examination of the patents-in-suit in view of the prior art cited by Defendants." 2004 WL 2599454, at *2. In contrast, in the present case the entire controversy ***cannot*** be resolved, or even informed, by a reexamination process that by definition must be restricted to a review of prior patents and printed publications (and not, for example, documents evidencing an invalidating prior public use or sale)—and in any event the outcome of which is not binding upon this Court. 37 C.F.R. § 1.510(b); MPEP §§ 2210, 2214, 2216-17, 2242, 2258; *see also Ethicon*, 849 F.2d at 1428.

Moreover, in this case Davis-Lynch submitted with its reexamination requests proposed amendments for eleven of the thirteen claims—including ***all*** of the '824 patent claims—asserted in this lawsuit. (Pl.'s Mot. Br. ¶ 4.). The PTO, once it approves the reexamination request and issues an order to reexamine, is required to proceed with actual reexamination based on the claims ***as***

---

[12] In addition to opposing Plaintiff's Alternative Motion for Dismissal Without Prejudice, Weatherford would oppose many if not all of the conditions on dismissal proposed in Plaintiff's motion brief. For example, item (e) would seem to require Davis-Lynch to "timely submit to the PTO comments provided by [Weatherford] to [Davis-Lynch] regarding prior art." (Pl.'s Mot. Br. at 5). However, under PTO rules, such a practice is expressly prohibited:

> The patent owner may not file papers on behalf of [a third party] and thereby circumvent the intent of the *ex parte* reexamination legislation and the rules. The Court of Appeals for the Federal Circuit held in *Emerson Elec. Co. v. Davoil, Inc.*, 88 F.3d 1051, 39 USPQ2d 1474 (Fed. Cir. 1996) that a federal district court does not have the authority to order a patent owner to file papers prepared by a third party in addition to the patent owner's own submission in a patent reexamination proceeding. Such papers

DM_US\8084841.v1
PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

*amended* in view of the submitted prior patents and printed publications. MPEP § 2221. Therefore, at a minimum as to those eleven claims, the reexamination will have no bearing on the claims *as originally asserted* in this case, which by virtue of Davis-Lynch's proposed amendments will be effectively *canceled* when the reexamination certificate is issued. 37 C.F.R. § 1.530; MPEP § 2250. The remaining two claims for which amendments are not yet proposed also likely will be scrutinized by the PTO during reexamination and similarly subject to amendment to distinguish them from the prior art. MPEP § 2258 ("[E]ach claim of the patent will be reexamined."); *see also* 35 U.S.C. § 302 (allowing "[a]ny person" to "file a request for an *ex parte* reexamination . . . of any claim"); 37 C.F.R. § 1.510(a) (same); MPEP § 2212 (same).

Additionally, the unpublished *Halliburton* decision on which Davis-Lynch relies currently is subject to a pending motion for reconsideration and a pending motion to clarify or, in the alternative, to amend the Court's order of dismissal and final judgment, and also may be subject to appeal. (*See* Ex. 4 (post-judgment portion of docket report).)

C.    ANY DISMISSAL OF THIS CASE SHOULD BE "WITH PREJUDICE."

Weatherford does not agree that this case should be dismissed. However, if the case is dismissed, it should be dismissed "with prejudice."

First, if this case is dismissed *without* prejudice as Davis-Lynch proposes and Weatherford opposes, Davis-Lynch would be free to refile this action against Weatherford in any jurisdiction or venue—and thereby walk away from its invalid patents and this Court's holding at the preliminary injunction stage. Dismissal *with* prejudice, on the other hand, will avoid the prejudice to Weatherford in the form of competitive harm and uncertainty that would result from only temporary adjournment.

---

prepared by the third party and filed by the patent owner will not be entered, and the entire submission will be returned to the patent owner as an inappropriate response. See MPEP § 2266 and § 2267.
MPEP § 2254.

DM_US\8084841.v1
PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

Second, Davis-Lynch, even before any reexamination order, has proposed a tremendous number of narrowing changes to the vast majority of the original claims of the patents-in-suit. (*See* Proposed Ams.)  Claims narrowed by reexamination are not enforceable for any past infringement before the reexamination certificate issues, and are subject to "intervening rights" like a reissue. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1248 (Fed. Cir. 1997) (affirming district court's judgment that defendant was not liable for infringement of plaintiff's reexamined patent during the period before issuance of the reexamination certificate because the original claims were substantively changed during reexamination); *see also* 35 U.S.C. §§ 252, 307; MPEP § 2293. Under the first paragraph of 35 U.S.C. § 252, made applicable to reexamination by 35 U.S.C. § 307,

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are **substantially identical**, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are **substantially identical** with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

Thus recovery for alleged infringement during the pre-reexamination period is barred unless the "claims of the original and . . . reexamined patents are substantially identical." *See id.*

The Federal Circuit has held that "'identical' means at most 'without substantive change.'" *Seattle Box v. Indus. Crating & Packing*, 731 F.2d 818, 828 (Fed. Cir. 1984).  Amendments made to patent claims during reexamination do not substantively change the claims if they "do not expand, narrow or otherwise alter the meaning or the scope of the claims in the original . . . patent." *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 976-77 (Fed. Cir. 1986); *see also Oak Indus. v. Zenith Elecs. Corp.*, 687 F. Supp. 369, 372 (N.D. Ill. 1988) (quoting Federal Circuit decisions that "call for a narrow reading of the term identical" such as "claims which 'merely clarify' or which 'correct[]' a drafting error" (citation omitted) (alteration in original)).

18

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

In this case, Davis-Lynch already has proposed substantial amendments that, if accepted by the PTO, will change the scope of eleven of the thirteen claims asserted in this lawsuit. By proposing these substantive amendments, Davis-Lynch already in effect has offered to relinquish its assertion against Weatherford of eleven of the thirteen claims named in this lawsuit for the entire pre-reexamination certificate period. *See* 35 U.S.C. §§ 252, 307. Moreover, the large number and the substance of the amendments and new claims already proposed, combined with the nature and relevance of the prior printed publications to be considered in the PTO's patentability determination both individually under 35 U.S.C. § 102 and in combination under 35 U.S.C. § 103, make it unlikely that *any* of the claims asserted against Weatherford in this litigation will survive reexamination without substantive amendment. Consequently, and for any and all of the reasons above, this case should not be dismissed without prejudice, but if it dismissed, it should be dismissed **with** prejudice.

As shown above, in considering the totality of the circumstances, Davis-Lynch's Second Motion to Stay should be denied. If any stay is ordered, Weatherford respectfully requests that this Court require Davis-Lynch to timely serve copies of all papers related to the reexamination on Weatherford during the stay so Weatherford is timely apprised of the progress of the proceeding. Also as shown above, in considering the totality of the circumstances, Davis-Lynch's Alternative Motion for Dismissal Without Prejudice should be denied, and this case should proceed toward trial. However, should the Court decide that the better course would be to dismiss pending outcome of the reexaminations (which Weatherford opposes), Weatherford requests that the Court exercise its discretion to dismiss this action **with** prejudice.

DM_US\8084841.v1
PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

Dated:  January 12, 2005.

 /s/ Stephen H. Cagle by Permission S. Calvin Capshaw
Stephen H. Cagle—Attorney-in-charge
Texas Bar No. 3591900; cagles@howrey.com
J. Dean Lechtenberger
Texas Bar No. 12100720; lechtenbergerd@howrey.com
Tyler T. VanHoutan
Texas Bar No. 24033290; vanhoutant@howrey.com
Joan E. Beckner
Texas Bar No. 24040496; becknerj@howrey.com
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive, Houston, Texas 77057
Telephone: (713) 787-1400
Facsimile: (713) 787-1440

Local Counsel:
S. Calvin Capshaw
Texas Bar No. 03783900; ccapshaw@mailbmc.com
Elizabeth L. DeRieux
Texas Bar No. 05770585; ederieux@mailbmc.com
BROWN McCARROLL, LLP
1127 Judson Rd., Suite 220, P.O. Box 3999
Longview, Texas 75601
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

ATTORNEYS FOR DEFENDANT,
WEATHERFORD INTERNATIONAL, INC.

DM_US\8084841.v1

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following counsel of record via ECF and U.S. Mail on January 12, 2005.

Guy E. Matthews
C. Vernon Lawson
THE MATTHEWS FIRM
2000 Bering Drive, Suite 700
Houston, Texas 77057
Telephone:  (713) 355-4200
Facsimile:  (713) 355-9689

Andy Wade Tindel
PROVOST & UMPHREY LAW FIRM, L.L.P.
112 E. Line Street, Suite 304
Tyler, Texas  75702
Telephone: (903) 596-09
Facsimile: (903) 596-0909

/s/ Stephen H. Cagle

PDF created with FinePrint pdfFactory Pro trial version http://www.fineprint.com