Page 1

```
 1              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                     TYLER DIVISION
 3
    DAVIS LYNCH                    :
 4        Plaintiff,                :
                                    :   C.A. NO. 6:06CV335
 5   VS.                            :
                                    :   TYLER, TEXAS
 6                                  :   JANUARY 7, 2009
    WEATHERFORD,                    :   10:30 A.M.
 7        Defendants.                :
 8
                    TRANSCRIPT OF PRETRIAL
 9          BEFORE THE MAGISTRATE JOHN D. LOVE
10   APPEARANCES:
11
     FOR THE PLAINTIFF:      MR. ANDY TINDEL
12                           PROVOST HUMPHREY
                             112 LINE STREET, SUITE 304
13                           TYLER, TEXAS   75702
                             (903) 596-0900
14
15                           MR. ERIC M. ADAMS
                             MR. ERNEST W. BOYD
16                           MEHAFFY WEBER
                             ONE ALLEN CENTER
17                           500 DALLAS STREET
                             SUITE 1200
18                           HOUSTON, TEXAS   77002
                             (713) 655-1200
19
20
21
22
23
24
25
```

EXHIBIT 13

CURRY JOHNSON JULIAN, INC.
903.533.1172          www.tylerreporters.com          800.533.1129
Electronically signed by Kimberly Julian (401-385-935-7323)
3294b6f3-dc09-4e00-bb8a-a41d3f3fe3b2

Page 2

1  FOR THE DEFENDANT:   MR. J. DEAN LECHTENBERGER
                        MS. JOAN E. BECKNER
2                       MR. ERIC S. SCHLICHTER
                        HOWREY, LLP
3                       1111 LOUISIANA, 25TH FLOOR
                        HOUSTON, TEXAS  77002-5242
4                       (713) 787-1529
5
                        MS. ELIZABETH L. DERIEUX
6                       CAPSHAW DERIEUX, LLP
                        1127 JUDSON ROAD, SUITE 220
7                       P.O. BOX 3999
                        LONGVIEW, TEXAS  75606-3999
8                       (903) 236-9800
9
10
11
    COURT REPORTER:     MS. KIMBERLY JULIAN
12                      CURRY JOHNSON JULIAN, INC.
                        CERTIFIED SHORTHAND REPORTERS
13                      P.O. BOX 270
                        TYLER, TEXAS  75710
14
15  PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY,
    TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

Page 3

1           THE COURT:  Ms. Morris, you may call
2  the case.
3           COURTROOM DEPUTY:  The Court calls Case
4  Number 6:07-CV-559, Davis-Lynch versus Weatherford
5  International.
6           THE COURT:  Announcements.
7           MR. TINDEL:  Good morning, Your Honor.
8  Andy Tindel, I'm here on behalf of Davis-Lynch.  And
9  with me I have Butch Boyd and Eric Adams.  We're ready
10 to proceed.
11          THE COURT:  The Defendant?
12          MS. DERIEUX:  Elizabeth Derieux on
13 behalf of Weatherford.  With me today is Dean
14 Lechtenberger who will be making the presentation on
15 behalf of the Defendant.  With us, also, Joan Beckner,
16 Eric Schlichter.  And we are ready to proceed.
17          THE COURT:  All right.  Thank you.
18 We're here today on two motions; one a Motion to
19 Strike and one a Motion for Leave to Supplement.
20          I don't know if the parties have discussed
21 the best way to approach the order of motions.  Has
22 there been any discussion about that, who would like
23 to argue first?
24          Mr. Tindel?
25          MR. TINDEL:  Your Honor, to answer your

Page 4

1  question, there has not been a discussion of how to
2  proceed this morning.  In our opinion, I don't think
3  there's really any need to take up the motions
4  separately, seriatim, I think they're sort of all
5  bound together.
6           And as far as if the Court wants to go
7  forward on the Motion to Strike, it was filed first
8  chronologically.  Or if the Court wants to go forward
9  on the Motion to Supplement, it doesn't make us any
10 difference one way or the other.  This is really all
11 the same set of operative facts that we're going to be
12 dealing with.
13          THE COURT:  Yes, I think they're all
14 sort of bound up together.  So I think due to the fact
15 the defendants filed their motion first and I think
16 they've got some issues with the original contentions
17 and these proposed supplement contentions, we'll hear
18 from the defendants first.
19          So Mr. Lechtenberger.
20          MR. LECHTENBERGER:  Your Honor, do you
21 prefer here or the podium?
22          THE COURT:  I prefer the podium.  But
23 it's up -- you know, if you're going to be needing
24 some paper or things of that nature or use the
25 projector, you can stay there.

Page 5

1           MR. LECHTENBERGER:  I will eventually.
2           THE COURT:  That's fine.
3           MR. LECHTENBERGER:  I have a
4  demonstrative.  If I may approach of the bench, I have
5  a copy for you and opposing counsel already has a copy
6  as well.
7           THE COURT:  All right.  Thank you.
8           Now, let me just say this:  I realize this
9  case has some years on it or this controversy between
10 the parties has some years on it.  We're sitting here
11 at 10:40.  I'm not planning on going -- plowing
12 through lunch, I'm not planning on bringing y'all
13 back.
14          So we need to get to the point and we need
15 to get to how we can resolve this, the Court can rule
16 on it and move on.  I don't want a four-year history
17 of what's happened.
18          So if you're going to go back four years,
19 five years, hit the high points and let's move to the
20 real meat of what the problem is.  This case seems
21 bogged down in quicksand, it appears, and you've got a
22 Markman hearing in two months and things need to get
23 moving.  So we need to move this hearing along.  We're
24 not, you know, having any three- or four-hour hearing
25 on this.

2 (Pages 2 to 5)

CURRY JOHNSON JULIAN, INC.
903.533.1172          www.tylerreporters.com          800.533.1129
Electronically signed by Kimberly Julian (401-385-935-7323)          3294b6f3-dc09-4e00-bb8a-a41d3f3fe3b2

Page 50

1  with that, Your Honor, that's why we initiated contact
2  five different times with them.
3       With respect to Andy's comments, Your Honor,
4  he mentioned that the current -- I'm sorry, the
5  current lead counsel took over late during the first
6  case. We don't disagree with that. We don't dispute
7  that. They were still under an obligation to review
8  the patent 3.4 disclosures of our accused product line
9  when we produced it.
10      And they said, okay, well, they filed a
11 re-examination and so we weren't looking at documents
12 anymore. Okay. The problem is, the patent rules are
13 clear and the laws of this Court is clear that before
14 they filed the second lawsuit they were obligated to
15 go back and diligently review all the information they
16 had, including the information from their earlier
17 lawsuit in which we identify. We put them on notice
18 of more than the three accused tools.
19      Here are the drawings under Patent Rule 3.4
20 that show how these tools operate. They were
21 obligated, before they filed this lawsuit, to go back
22 and look at that information, not only before the
23 lawsuit but to include in their February '08
24 infringement contentions.
25      Let me also clear up something else, Your

Page 51

1  Honor. There's talk about all these 700,000 pages of
2  documents we produced. We did produce those
3  documents. Before we produced those -- those were our
4  electronic documents that we produced. That
5  production started around June/July of last summer.
6       Prior to producing any of those documents,
7  we produced our 3.4A disclosures of our current
8  product line. The 55 models that they've now
9  identified, that was produced in late April, and then
10 in early May we actually identified them by Bates
11 numbers. Okay. We were in the 20,000 range at that
12 point. We identified particular -- and they mentioned
13 that in their briefs, they admit we identified the
14 specific Bates ranges for those 50 models or 55
15 models. Okay.
16      We also produced what's attached as exhibits
17 to both motions, on the same day we produced -- in
18 late April of 2008 we produced a sales summary of
19 sales of every one of the models that we've sold. Not
20 just the three they accused, every one in our product
21 line.
22      From that information, there is no doubt
23 which models we had sold. We identified -- we also
24 identified in response to their interrogatories in
25 May, not only did we identify the drawings, we also

Page 52

1  identified the sales summary, the sales summary that
2  Mr. Adams actually was able to prepare a list of the
3  models that he used with Mr. Logiudice. So he could
4  do it in November in preparation for Mr. Logiudice's
5  deposition, why couldn't he do it seven or eight
6  months earlier when we produced it at that point?
7       In other words, Your Honor, this image that
8  they're trying to portray that there was so much
9  confusion in all these documents we produced, most of
10 the documents -- I mean, we told them the specific
11 documents that are related to how our tools operate.
12 All right. There's only 50 or 60 pages of documents,
13 one for each drawing or one drawing for each model.
14      So in essence, in late April, 2008, we
15 handed them their infringement evidence and we handed
16 them their damages evidence. Everything after that
17 only goes, at best, to willfulness and their attempts
18 to try to find something that would suggest that we
19 copied them.
20      But that's not why we're here today. We're
21 still here for the infringement contentions which we
22 can deliver to them and we identify them by Bates
23 number, a limited number of documents which show the
24 drawings of every one of our models.
25      So to the extent that they're trying to say

Page 53

1  there was confusion and all that, there's absolutely
2  no correspondence going back asking if there's
3  something unclear about our 3.4 drawings, that there's
4  any confusion about them. They didn't come and ask us
5  about them. If they were confused, you know, they
6  didn't let us know on it or we would have cleared up
7  any confusion.
8       THE COURT: Let me ask you this: They
9  are saying -- their contention is these new products,
10 new model numbers, they're essentially just that, that
11 there are really no difference, they're just new model
12 numbers, they operate essentially the same way, at
13 least, I guess, insofar as the claims they are
14 accusing the products of infringing. What's your
15 position?
16      MR. LECHTENBERGER: If that's the case,
17 Your Honor, why couldn't they identify the 55 models
18 earlier when they identified the other three? If
19 they're so similar, they should have easily been able
20 to comply with the patent rules which requires them to
21 identify each model by name. If they're that similar,
22 if that's their position, it's not our position, it's
23 their position. But if that's the case, there's no
24 excuse for them to wait until December to tell us that
25 when we're just weeks away from a Markman ruling and

14 (Pages 50 to 53)

CURRY JOHNSON JULIAN, INC.
903.533.1172                    www.tylerreporters.com                    800.533.1129
Electronically signed by Kimberly Julian (401-385-935-7323)    3294b6f3-dc09-4e00-bb8a-a41d3f3fe3b2

Page 54

1  we've lost a year's worth of discovery on issues that
2  we could have done since February of 2008 if they had
3  complied with the patent rules.
4      THE COURT: Okay. I understand that's
5  your position. But as to the prejudice that it puts
6  you to, what is your position? How does this
7  prejudice you for them to add these? Setting aside it
8  took them too long, let's set aside that issue, but
9  how does it now prejudice you to add these products?
10     MR. LECHTENBERGER: Okay. Well, let me
11 go back. Can I address the claims, like in 37 they've
12 added two new tools, the second tools that would
13 satisfy the limitations of Claim 37?
14     THE COURT: Okay. So how this
15 prejudices you?
16     MR. LECHTENBERGER: Yes, Your Honor.
17     THE COURT: All right. Go ahead.
18     MR. LECHTENBERGER: We've already had
19 the deposition of a third-party co-inventor. We've
20 lost -- the fact that they have identified some new
21 tools, tools that had been out in the prior art for a
22 long time, we've lost our opportunity. Those tools
23 raise new issues relating to the validity of Claim 37
24 and inequitable conduct and issues with respect to the
25 Markman briefing. We've lost the time needed to

Page 55

1  develop that. We've been prejudiced by the fact that
2  we've already taken the deposition of a third-party
3  co-inventor, so we didn't have the opportunity to ask
4  him. We would have to go back and replow that,
5  assuming his attorney would put him up again.
6      So in other words, we've spent hundreds of
7  thousands of dollars to get to this point to let them
8  now add more claims back in and raise new issues
9  relating to claim construction, validity and
10 infringement and inequitable conduct, Your Honor.
11 We're going to have to go back and replow old
12 discovery. And quite frankly, it still remains to be
13 seen whether or not they're going to give us
14 sufficient infringement contentions, when to date they
15 haven't given us sufficient ones.
16     THE COURT: Okay. Now, back to the
17 products they're trying to add, how does this
18 prejudice you?
19     MR. LECHTENBERGER: Obviously it adds a
20 lot more tools to the case, Your Honor.
21     THE COURT: Do they operate differently
22 as it relates -- you know, I know you dispute their
23 contentions. As far as you can tell, what is it that
24 -- how does it prejudice you? Do they operate
25 differently as it relates to this claimed invention?

Page 56

1      MR. LECHTENBERGER: Yeah, some of them
2  do. Not all of them. Some models operate essentially
3  the same. But they have some of the same components
4  in each one of them, I'll give you that, Your Honor.
5  But again, that goes to the fact that why didn't they
6  identify them earlier?
7      THE COURT: Okay. Let me ask a final
8  question for you, and then I want to go back to the
9  plaintiff and then I think we'll be done.
10     But your motion is to strike their
11 infringement contentions. Mr. Tindel says this is a
12 death penalty sanction. What's your response to that?
13     MR. LECHTENBERGER: Your Honor, to let
14 them get away with what they've done for
15 four-and-a-half years would essentially render the
16 patent rules meaningless. The patent rules, from a
17 public policy standpoint, are in place to prevent this
18 type of litigation conduct from occurring. They chose
19 this forum. They were fully aware of the patent
20 rules. The patent rules are crystal clear. To let
21 them now amend, it sends the wrong message to other
22 litigants in this district, Your Honor.
23     THE COURT: All right. Let me go back
24 to the plaintiff for a moment. I'm going to ask --
25 I've got three questions that I want to ask.

Page 57

1      I want to first ask about this -- I know we
2  discussed this a little bit, but Mr. Lechtenberger
3  specifically points out that in May -- really April of
4  '08 and May of '08 he gave you some information, he
5  believes, sales summary and the product drawings that
6  he says included the additional models and that why at
7  that point could you not have accused these products?
8      MR. ADAMS: Your Honor, a couple of
9  clarifications on that. It wasn't until the
10 defendants produced the sales report that we had an
11 idea as to the entire scope of how many different
12 models we were dealing with. And that was in late
13 April. And I believe they actually supplemented their
14 interrogatories to refer to that sales report at the
15 end of May.
16     Up to that point, we really didn't have an
17 idea as to how many different models are there. The
18 only option we had was to pour through different
19 documents and try and isolate technical drawings from
20 their productions.
21     And when they did refer in their 3-4
22 disclosure about look at these Bates ranges, in that
23 same disclosure they started off by saying, as the
24 parties have agreed, Weatherford will rely on its
25 previously-produced documents and then additionally

15 (Pages 54 to 57)

CURRY JOHNSON JULIAN, INC.
903.533.1172    www.tylerreporters.com    800.533.1129
Electronically signed by Kimberly Julian (401-385-935-7323)    3294b6f3-dc09-4e00-bb8a-a41d3f3fe3b2

Page 62

1  the different models that we comprised from the sales
2  report. He identified the models that he had
3  knowledge of. We also walked through what the
4  difference letters meant. You know, for example, if
5  it's L42A, my memory is that A stands for aluminum, if
6  it's a W, it's composite material. I mean, we walked
7  through all those different distinctions.
8       I walked through the L42A model, which is
9  one of the three that we had specifically identified
10 before, and in walking through the infringement
11 components or infringing components on L42A, after
12 each component I would say, you have knowledge of
13 these other 12 to 15, do those all have two flapper
14 valves? His responses were yes. Do they all have,
15 you know, an inner tubular component? Yes, they do.
16      So that's how we were trying to solidify
17 that these particular models that he had knowledge of,
18 which I believe was between 12 and 15, did have the
19 same infringing components.
20      THE COURT: All right. Well, we're
21 going to have to wrap up here. I appreciate the
22 arguments.
23      We're going to get you a ruling as soon as
24 we can on this. Let me just say, no matter how it
25 comes out, as I've said before, I think it's more

Page 63

1  in-depth communication to head some of these things
2  off and hopefully not reach this point, and that's
3  what I'm going to be looking for in the future in this
4  case and, of course, in all other cases that y'all are
5  involved in.
6       Has this case been mediated?
7       MR. ADAMS: Yes, Your Honor.
8       MR. BOYD: The first mediation, there's
9  still a second one.
10      THE COURT: Who is your mediator?
11      MR. ADAMS: Gary McGowan.
12      THE COURT: And you'll have a second
13 round set after the Markman.
14      All right. Thank you very much for your
15 arguments. We'll get you a ruling as soon as we can.
16 We're adjourned.

Page 64

1       I certify that the above and foregoing pages
    contain a true and correct transcript.
2
3
4  _____    _____
    KIMBERLY J. JULIAN             DATE



PRINTED DUPLICATE
The original certified E-Transcript
file was electronically signed
using RealLegal technology.

17 (Pages 62 to 64)

CURRY JOHNSON JULIAN, INC.
903.533.1172           www.tylerreporters.com           800.533.1129
Electronically signed by Kimberly Julian (401-385-935-7323)     3294b6f3-dc09-4e00-bb8a-a41d3f3fe3b2